ANNUNZIATA GIRARDI, administratrix,[1] vs. RICHARD J. GABRIEL & others.[2]

No. 94-P-721.

Middlesex. March 14, 1995. - May 16, 1995.

Present: WARNER, C.J., SMITH, & JACOBS, JJ.

*Practice, Civil*, Summary judgment. *Negligence*, Attorney at law, Proximate cause. *Proximate Cause. Damages*, Attorney's fees.

In an action brought by the representative of an estate against the attorneys who had prepared the will of the deceased, alleging that but for the defendants' negligent failure to have the execution of the will properly witnessed the assets of the estate would have poured over into a trust and would thus not have been lost, the plaintiff did not demonstrate, on the record of the defendants' motion for partial summary judgment, that the losses, with the exception of certain legal fees, were more likely than not due to the defendants' negligence. [557-561]

CIVIL ACTION commenced in the Superior Court Department on July 20, 1989.

The case was heard by *George A. O'Toole, Jr.*, J., on a motion for summary judgment, and entry of final judgment was ordered by *Charles J. Hely*, J.

*David W. Hays* for the plaintiff.

*Laurie J. Condos* for the defendants.

WARNER, C.J. Annunziata Girardi, as administratrix of her husband Venanzio's estate, brought an action for legal malpractice against the attorneys who had prepared his will. The will provided that Venanzio Girardi's assets were to pour over into a family trust. Because the defendants failed to have the execution of the will properly witnessed, Girardi died intestate, and his estate passed directly to his wife and

---

[1] Of the estate of Venanzio Girardi.

[2] Robert R. Gabriel and Gabriel & Gabriel, P.C.

three children rather than pouring over into the trust.[3] The plaintiff sued the defendants in tort and contract, claiming that their negligence resulted in the loss of the estate's assets. A Superior Court judge granted the defendants' motion for partial summary judgment on the grounds that the losses were too remote and speculative to be related causally to the defendants' negligence. The plaintiff appeals the dismissal of these claims.[4] With one exception, regarding the claimed payment of excess legal fees, we affirm the judgment.

A defendant moving for summary judgment may satisfy his burden by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that proof of that element is unlikely to be forthcoming at trial. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). The issue in this case is whether the defendants have demonstrated that proof that their negligence caused the plaintiff's losses was unlikely to be forthcoming at trial.

The plaintiff would satisfy her burden of proof at trial by introducing evidence from which a jury could conclude that the harm she suffered was more likely caused by the defendants' negligence than by some other agency. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58 (1983). We summarize the facts in the light most favorable to the plaintiff to determine whether the defendants have shown that no genuine issue of material fact exists and that they were entitled to judgment as matter of law. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 370-371, cert. denied, 459 U.S. 970 (1982).

*Facts.* We relate the facts as they appear in the pleadings, memoranda, affidavits, and depositions before the Superior

---

[3]The trustees never executed the trust document, but that failure presents no issue on appeal.

[4]A two-count complaint filed in July, 1989, claimed damages for excess tax liability and other unspecified losses. An amended complaint filed in May, 1991, added two additional counts claiming further losses. Counts III and IV of the amended complaint were dismissed and are the subject of this appeal. The parties moved jointly for entry of final judgment in the plaintiff's favor for $8,877.79 on counts I and II and incorporation in the judgment of the order dismissing counts III and IV. Final judgment entered on February 15, 1994, in accordance with the joint motion.

Court judge. The defendants served as the Girardi family's legal counsel between 1976 and 1986. Robert Gabriel, who had been a selectman and town counsel for Northborough, handled all of Girardi's real estate matters in the Marlborough and Northborough areas. With Robert Gabriel's encouragement, Girardi purchased undeveloped tracts of land in Marlborough, Northborough, and Hubbardston. A successful real estate developer, he believed that the defendants' familiarity with local real estate practices and government would enable them to secure the necessary approvals for his subdivision plans. Girardi adhered to conservative business practices, using previously generated profits to develop real estate without incurring debt.

After developing a life-threatening illness in 1986, Girardi had the defendants prepare an estate plan that included a pour-over will and trust which left his approximately $3,000,000 estate to the Venanzio Girardi Family Trust. His wife and three children, one of whom was a minor, were beneficiaries. Annunziata Girardi was named as executrix, and she and Richard and Robert Gabriel were named as trustees. Mrs. Girardi had no business experience and a limited education and understanding of the English language. Girardi signed the will and trust on July 23, 1986, but the will was never witnessed and the trust never signed by the trustees.

The defendants discovered their error when they called Mrs. Girardi and the three children into their office for a reading of the will shortly after Girardi's death in February, 1987. They informed the plaintiff of their mistake and told her that they might be sued as a result. Within a short time, the plaintiff hired the law firm of Weiss, Angoff, Coltin, Koski & Wolf, P.C. (Weiss, Angoff) to oversee the administration of the estate.[5]

Three months later, while vacationing in Barbados, Mrs. Girardi met Atlanta businessman Charles Andrews. After a whirlwind romance, she invited Andrews to live with her and

---

[5]For services rendered, Weiss, Angoff submitted a bill for $34,500 which was reduced subsequently to $17,500.

to assist her in managing her husband's estate. They were married in May, 1988.

Andrews became dissatisfied with Weiss, Angoff's progress, and in the fall of 1987 he advised the plaintiff to switch law firms to Choate, Hall & Stewart (Choate, Hall). That November, Choate, Hall indicated that the estate needed $900,000 to pay debts and expenses. Since the assets consisted primarily of real estate, the estate did not have sufficient funds available to pay its bills.[6]

Andrews and Choate, Hall developed a business plan with the goal of obtaining subdivision approvals for the real estate in Marlborough, Northborough, and Hubbardston, and then selling it. There were a number of interested buyers, some of whom required that various permits and approvals be secured. Choate, Hall recommended that a business manager superintend the plan, and Andrews convinced the family to hire him at a salary of $500,000, payable in stages.

In January, 1988, the plaintiff and her children approved the business plan and, on the advice of their attorneys and Andrews, borrowed $535,000.[7] On Choate, Hall's recommendation, they hired a new engineering firm at a cost of $204,000. That April, they borrowed $1,060,000 to finance the business plan, pledging the Marlborough, Northborough, and Hubbardston real estate as collateral and signing the note personally. In August, the plaintiff and her children borrowed an additional $250,000, pledging their family home as collateral. The money was to go into the estate account at Choate, Hall's office. No attorney from Choate, Hall attended the closing, however, and Andrews misappropriated the funds.[8]

---

[6]According to the plaintiff, this figure understated the amount of legal and professional fees and debt servicing expenses. The plaintiff did not bring any claim against Choate, Hall.

[7]Mr. Girardi had borrowed $300,000 in July, 1986, to pay State and Federal taxes. Choate, Hall and Andrews told the family that the purpose of this loan was to pay off the balance of Mr. Girardi's loan.

[8]Prior to the misappropriation, Andrews had convinced the plaintiff and her attorneys to allow him to borrow $120,000 from the estate. The estate never recovered these funds.

By the fall of 1988, none of the Northborough, Marlborough, or Hubbardston properties had received subdivision approval. Andrews left the area suddenly. In January, 1989, the engineers discovered that the town of Northborough had voted not to continue water and sewer extensions in future subdivisions. As a final effort, Choate, Hall contacted the defendants, but they were unable to assist in obtaining the necessary approvals. In the summer of 1989, the real estate market collapsed. The plaintiff and her children defaulted on their loans, and the banks foreclosed on their property in June, 1990. At this time, Choate, Hall stopped representing the estate. The plaintiff paid Choate, Hall $170,000 for legal services.

*Causation.* "The principles and proof of causation in a legal malpractice action do not differ from those governing an ordinary negligence case." Mallen & Smith, Legal Malpractice § 8.3, at 411 (3d ed. 1989). See *DiPiero* v. *Goodman*, 14 Mass. App. Ct. 929 (1982), and cases cited. The plaintiff contends that but for the defendants' negligence, the estate's assets would have poured over into the Girardi Family Trust, and the extensive losses would not have occurred. She relies on two expert witnesses, Attorneys Sumner Tilton and Charles Orcutt, to support the claim that the defendants' negligence proximately caused the losses. The substance of the witnesses' affidavits and deposition testimony follows.

Both experts stated that the Gabriels became potential or actual defendants in a malpractice suit when the will's invalidity was discovered. Under these circumstances, they could not properly manage the estate, and the beneficiaries were thereby deprived of the Gabriels' familiarity with real estate development in the Northborough and Marlborough areas. Attorney Orcutt stated that, because the Gabriels were precluded from managing the estate, its administration was characterized by extensive borrowing to pay for new engineers, attorneys, a business manager, and excessive monthly interest payments. Little thought was given to managing cash flow and repaying real estate loans. As a result, the es-

tate paid out over $983,000 and lost all the land through the foreclosure of mortgages.

According to Attorney Orcutt, reasonable local attorneys, keeping the engineers and broker that Girardi had used, would have sold much of the marketable land early on and obtained subdivision approval for the Northborough land. Orcutt stated that he lacked the information to determine the estate's current value, but in his opinion, it would be of greater value had the scenario he presented been followed.

Attorney Tilton testified that the defendants' negligence created a set of probabilities which cost the estate "a great deal of money." He could not specify the particular losses resulting from the Gabriels' inability to manage the trust or quantify the cost of their negligence. He stated that he could only speculate on how the Gabriels would have managed the estate if Girardi had died testate. Attorney Tilton acknowledged that under the trust, the trustees could resign at any time with thirty-days' notice. Further, the trustees had been given virtually a free hand, short of misconduct, in managing the estate.

Attorneys Orcutt and Tilton stated that the intestacy caused delay in the estate's administration because new attorneys had to be hired and guardianship proceedings instituted for the minor beneficiary. Attorney Tilton contended that the delay, which he characterized as a minimum of twelve weeks, escalated the risk of loss in a falling real estate market. In his deposition, however, he testified that he could not give an expert opinion as to whether the delay caused any damages.

Finally, the plaintiff's experts stated that the defendants' negligence required the payment of additional legal fees for (1) hiring a new set of attorneys who were unfamiliar with the subject real estate, (2) arranging for Annunziata Girardi to be named administratrix, (3) appointing a guardian for the minor son, and (4) consolidating the real estate into a trust. Unnecessary Federal estate taxes were also incurred.

Generally, the issue of proximate cause is one of fact for the jury. *Mullins* v. *Pine Manor College*, 389 Mass. at 58.

However, the issue may be resolved as matter of law at the summary judgment stage. *Leavitt* v. *Mizner*, 404 Mass. 81, 88-92 (1989). In this case, except for the expenditure of additional taxes[9] and legal fees, the materials before the judge provided no basis for concluding that the defect in Girardi's will more likely than not caused the loss of the estate's assets.

The plaintiff's argument assumes that had the will been properly witnessed and the Girardi Family Trust gone into effect, the Gabriels or other knowledgeable local real estate experts would have managed the estate, that they would have followed Girardi's conservative business practices, that they would have been likely to obtain necessary subdivision approvals and permits, and that they would have preserved the estate's assets. These assumptions are unwarranted. The Gabriels could have resigned as trustees on thirty-days' notice. Had they remained trustees, nothing in the trust required them to manage the assets conservatively. No evidence was presented to show that the Gabriels would, in fact, have been actively involved in managing the real estate had they been trustees. Whether they could have obtained subdivision approvals and permits remains purely conjectural. Had others been hired to manage the real estate, one can only speculate as to their identity or behavior.

With regard to Andrews, there is no factual basis from which to conclude that his excessive management fees, his misappropriation of $250,000, and his uncollectible $120,000 loan are more likely than not the result of the defendants' negligence. Andrews succeeded in exerting his influence over the estate's assets while working with what Attorney Tilton termed the "fine" trust department of Choate, Hall. No evidence supports a conclusion that the result would have been different under the Girardi Family Trust.

Nor is there any basis for attributing the adverse consequences of the fall in real estate prices to the defendants' negligence. Although the plaintiff's expert initially stated

---

[9]The estate's additional tax liability, the subject of counts I and II of the complaint, is not at issue in this appeal. See note 4, *supra*.

that the delay in administering the estate contributed to the risk of loss in a falling real estate market, he conceded that he could not say that the delay caused any damages.

Except for certain additional legal fees, discussed below, the plaintiff has not presented evidence from which a jury could conclude that "but for the attorney[s'] negligence, the loss would not have occurred; or, alternatively, [that] the loss . . . result[ed] directly from the tortious conduct." Mallen & Smith, *supra* at § 8.3, at 412. The mere possibility that the defendants' negligence caused the harm is not sufficient to take the issue to the jury. *Marcus* v. *Griggs, Inc.*, 334 Mass. 139, 143 (1956). Nor do the conjectures of the plaintiff's experts aid her case. See *Toubiana* v. *Priestly*, 402 Mass. 84, 91 (1988), quoting from *Kennedy* v. *U-Haul Co.*, 360 Mass. 71, 73-74 (1971).

*Legal fees.* The materials before the judge did not warrant the grant of summary judgment for the defendants concerning the plaintiff's claim that she incurred additional legal fees as a result of the defendants' negligence. In their motion for summary judgment, the defendants conceded that the plaintiff "may be able to prove that the invalidity of the will caused [the] estate certain damages, such as . . . additional attorney's fees to deal with the unexpected intestacy." Both the plaintiff's expert witnesses stated that the defendants' negligence resulted in additional legal fees by requiring (1) the hiring of new attorneys who had to familiarize themselves with the estate, (2) the consolidation of the real estate into a trust, (3) the filing of a petition for administration, (4) the appointment of an administratrix,[10] and (5) arranging for a guardian for the minor beneficiary.[11] See *Fishman* v.

---

[10]Had the will been valid, it would, of course, have been necessary to present a petition for probate of the will and the appointment of Annunziata as executrix.

[11]No provision was made in the will for the appointment of a guardian. See G. L. c. 201, § 3. The need for an appointment was not causally related to the defendants' negligence in failing to have the will properly executed, as a guardianship of the property of the minor would have been necessary in any event. See G. L. c. 201, § 2. See generally Newhall, Settlement of Estates §§ 371 & 372 (4th ed. 1958).

*Brooks*, 396 Mass. 643, 646 (1986). These requirements raise genuine issues of material fact as to the necessity for, and the reasonable amount of, additional legal fees incurred by the plaintiff. Thus, the defendants have not met their burden on this issue. See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989).

The judgment is reversed, and the case is remanded to the Superior Court for a trial limited to the issue whether the defendants' negligence caused the plaintiff to incur additional legal fees, and, if so, in what amount. The balance of the judgment is affirmed.

*So ordered.*