LAWRENCE SAVINGS BANK *vs.* PAUL E. LEVENSON & others.[1]

No. 01-P-36.

Essex. December 11, 2002. - October 21, 2003.

Present: GELINAS, MASON, & MILLS, JJ.

*Attorney at Law,* Malpractice, Negligence, Attorney-client relationship, Conflict of interest. *Agency,* Agent's knowledge. *Negligence,* Attorney at law, Standard of care. *Conflict of Interest. Damages. Practice, Civil,* Damages, Costs.

At the trial of a civil complaint alleging malpractice on the part of the defendant attorneys in representing the plaintiff bank on certain loans, the judge properly denied the defendants' motions for judgment notwithstanding the verdict, where the knowledge and acts of the bank's agent (a loan officer), who was engaged in fraud against the bank, could not be imputed to the bank, and where there was evidence from which the jury might conclude that the defendants were well aware that many of the actions of the bank's agent and a third party (a borrower) were adverse to the bank's interests. [703-706]

The evidence at the trial of a civil complaint alleging malpractice on the part of the defendant attorneys in representing the plaintiff bank on a particular loan was sufficient to prove that the defendants had a conflict of interest, that this conflict caused them to favor one client over the bank, and that their negligence was the proximate cause of the bank's loss; moreover, the bank did not later ratify the loan. [706-708]

The evidence at the trial of a civil complaint alleging malpractice on the part of the defendant attorneys in representing the plaintiff bank on a particular loan was sufficient to prove that the defendants represented the bank at the same time that they represented another party to the loan, and that the actions of the defendants forced the bank to extend additional credit after extending an unsecured loan. [708-709]

At the trial of a civil complaint alleging malpractice on the part of the defendant attorneys in representing the plaintiff bank on a particular loan, the bank's claim was not barred by the applicable statute of limitations, where the bank was not aware of the injury caused by the defendants' conduct until a time within the statutory accrual period; further, the

[1] Harold R. Davis, P.C.; C. Michael Malm; Julian J. D'Agostine; Frank P. Conrad; Robert C. Gerrard; Sidney J. Wartel; Judith Ashton; Grover S. Parnell, Jr.; Robert A. Nylen, Jr.; Howard P. Speicher; Elliot J. Mahler; Bruce G. Daniels; William F. Griffin, Jr.; John R. Berman; Gary S. Matsko; John T. Lynch; Robert J. Galvin; Carol R. Cohen; and Claudia B. McKelway.

evidence was sufficient to prove that the defendants' submission of a zoning opinion in relation to the granting of the loan proximately caused the bank a loss, where the opinion should have identified a problem with parking and zoning. [709-710]

The judge at the trial of a civil complaint alleging malpractice on the part of the defendant attorneys in representing the plaintiff bank on certain loans erred in admitting evidence of the bank's borrowing costs incurred in obtaining money with which to make loans, and in permitting the jury to award such cost of funds as an element of damages on two of the loans, where an award of cost of funds and prejudgment interest was duplicative. [710-712]

In a civil action alleging malpractice on the part of the defendant attorneys in representing the plaintiff bank in connection with certain loans, there was no merit to claims that the judge erred in denying the defendants' motion for a credit on the bank's recovery on the loans, and in admitting evidence of a particular loan closing; moreover, there was no merit to the bank's claims that the judge erred in denying the bank's motion for recusal, in declining to charge the jury on the bank's count for breach of fiduciary duty, and in not admitting evidence of criminal convictions or of reliance and causation. [712-713]

CIVIL ACTION commenced in the Superior Court Department on August 31, 1995.

The case was tried before by *S. Jane Haggerty*, J., and motions for judgment notwithstanding the verdict and for remittitur or a new trial were also heard by her.

*Allen N. David* for the defendants.

*Deborah L. Thaxter* for the plaintiff.

GELINAS, J. The defendants, some twenty attorneys, were, at the time this case was brought in 1995, members of the law firm of Davis, Malm & D'Agostine. A jury found them negligent on certain claims of malpractice brought by the plaintiff Lawrence Savings Bank. The bank claimed damages from the defendants' representation of the bank in connection with five loan transactions, styled here the Peter & Sons loan, the Winship loan, the Bank Building loan, the Liberty Millworks loan, and the Peter Kelly loan. The trial judge submitted the bank's negligence, breach of contract, and breach of fiduciary duty counts to the jury in the form of special verdict questions framed in terms of negligence, refusing to charge the jury specifically in terms of breach of contract or fiduciary duty. The special verdict form contained twenty-nine questions divided into

groups that corresponded to the loans. The jury found, on the Peter & Sons loan, that the defendants had been negligent in not disclosing to the bank certain material details of the loan as made, but that there was no injury to the bank; the jury determined that the bank would have made the subsequent loans even had the information been disclosed. On the Winship loan, the jury found against the defendants in the amounts of $419,319 for loss of principal and $92,500 for the bank's alleged cost of borrowing these funds, reduced by twenty percent, a figure representing the bank's comparative negligence. On the Liberty Millworks loan, the jury found against the defendants in the amount of $217,348 for loss of principal, reduced by fifty percent for comparative negligence; the jury found there was no cost of funds on this loan. On the Peter Kelly loan, the jury found against the defendants in the amounts of $533,606 for loss of principal and $175,000 for the bank's alleged cost of borrowing the funds, reduced by fifteen percent for comparative negligence. On the Bank Building loan, the jury found for the defendants. The trial judge found for the defendants on the bank's claim for damages under G. L. c. 93A.

The defendants filed motions for judgment notwithstanding the verdict and for a new trial or remittitur with respect to the Winship, Liberty Millworks, and Peter Kelly loans. These motions were denied, as was a motion for credit for amounts the bank had recovered from Paul Allen, one of the borrowers. Judgment ultimately entered in favor of the bank in the sum of $897,694.30 for loss of principal, plus statutory prejudgment interest in the amount of $521,548.03, and in favor of the bank in the amount of $222,750 for cost of funds, plus statutory interest in the amount of $129,414.69. Both parties appeal.

The defendants claim that the judge erred in denying the motion for judgment notwithstanding the verdict because (1) the acts and knowledge of its authorized representatives must be imputed to the bank, and (2) the evidence was insufficient to support the jury's verdict with respect to the Winship, Liberty Millworks, and Peter Kelly loans. The defendants also claim that the judge erred in allowing the jury to award the bank "cost of funds" as an element of damages and in embodying such an award in the final judgment; in denying the defendants'

motion for a credit on the bank's other recoveries on the loans; and in permitting the jury to consider certain evidence introduced with respect to the closing of the Peter & Sons loan. The bank, although expressing satisfaction with the judgment, urges that, should all or a portion of the jury's verdict be overturned, we should order a new trial on all claims, contending that there was error in the judge's (1) denial of its motion to recuse; (2) refusal to charge the jury on its breach of fiduciary duty count; (3) refusal to admit evidence of certain criminal convictions; and (4) refusal to admit certain evidence pertaining to reliance and causation. We affirm, with the exception of the award of "cost of funds" to the bank, which we reverse.

We recite the facts in outline, reserving details as necessary to our discussion of the issues. Certain members of the defendants' firm acted as counsel to the bank at the closings of a series of loans that the bank made to Paul Allen, his wife, some of his business associates, various entities that he controlled, and others for whom he acted, and was paid, as a "finder." Allen was one of the bank's largest and most favored customers. He was particularly close to Jeffrey Diminico, a loan officer and vice-president of the bank. Allen had come to know Diminico when he served as Allen's loan officer at another bank. When Diminico was discharged from that job, Allen provided him with funds and arranged to have him live in a guest house on Allen's property. Allen then introduced Diminico to the bank, and successfully encouraged the bank to hire him as vice-president and loan officer.

In the usual circumstance of mortgage lending, a borrower has no choice in the selection of a bank's attorney, and must pay the bank's attorney's fees. No attorney-client relationship is established between the bank and the borrower in these circumstances, a fact that must be made explicit to certain borrowers, see G. L. c. 184, § 17B. Here, members of the defendants' firm had represented Allen since before his becoming involved with the bank, and had known Diminico prior to his being hired by the bank. After Diminico was hired, Allen introduced the defendants' firm to the bank, and through Allen's and Diminico's efforts, the firm was retained to represent the bank in virtually every major construction and commercial loan

transaction that the bank made from the time Diminico was hired in 1986 until he was fired in May of 1988. During that period, Diminico sent bank business to the defendants, and Allen referred business to them. The defendants continued to represent Allen on numerous matters not involved with the loans here in question, during the entire time that the firm represented the bank. Allen also recruited borrowers, who paid him finder's fees, in violation of bank policy, for his services in obtaining loans from the bank. The defendants represented the bank with regard to these loans. Many of these borrowers were also clients of the defendants, and the defendants represented them as borrowers as well.

*Motions for judgment notwithstanding the verdict.* We first consider the claims of error in the denial of the defendants' motions for judgment notwithstanding the jury's verdict. The defendants seasonably filed motions for directed verdicts on all counts, together with appropriate memoranda specifying the grounds therefor, both at the close of the plaintiff's evidence and at the close of all of the evidence. The motions for judgment notwithstanding the verdict were properly before the court. See Mass.R.Civ.P. 50(b), as amended, 428 Mass. 1402 (1998); *Bonofiglio* v. *Commercial Union Ins. Co.,* 411 Mass. 31, 34-35 (1991). The standard of review with respect to a motion for judgment notwithstanding the verdict is the same as that for a motion for directed verdict; we view the evidence, including all reasonable inferences therefrom, in the light most favorable to the party against whom the motion is directed. See *Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719 (1947); *Corbin* v. *Hodson,* 9 Mass. App. Ct. 900 (1980). We look to see whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [nonmoving party]." *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972), quoting from *Kelly* v. *Railway Exp. Agency, Inc.,* 315 Mass. 301, 302 (1943). See *Boothby* v. *Texon, Inc.,* 414 Mass. 468, 470 (1993).

In cases involving claims of negligence, we look to see whether, when the evidence is viewed in this manner, the plaintiff has carried its affirmative burden of introducing proof, either by direct evidence or by rational inferences of prob-

abilities from established facts, that it had been injured, and that there was a greater likelihood that the injury stemmed from an act of negligence for which the defendant was responsible than from a cause for which the defendant was not liable. See *Bigwood* v. *Boston & N. St. Ry. Co.*, 209 Mass. 345, 348 (1911); *Alholm* v. *Wareham*, 371 Mass. 621, 626-627 (1976). The plaintiff's evidence need not exclude every other possibility of cause for its injury except for that of the negligence of the defendant. *Bigwood*, 209 Mass. at 348. As the judge charged, and as the jury found in this malpractice case, the plaintiff's own negligent actions can contribute to the injury, resulting in a diminution or elimination of the damage award even if the defendants are found to have negligently caused the injury in some way. See *Clark* v. *Rowe*, 428 Mass. 339, 341-345 (1998) (comparative negligence applies to a claim of legal malpractice).

When reviewing a case involving legal malpractice, we consider whether there was sufficient evidence to warrant a jury's findings with respect to negligence, causation, apportionment of liability, and support for the damages awarded. See *Girardi* v. *Gabriel*, 38 Mass. App. Ct. 553, 557 (1995) (principles of proof and causation in a legal malpractice action do not differ from those governing an ordinary negligence action). As the plaintiff is a corporate entity, we also consider general principles of agency, to determine whether notice to an agent in this instance required a finding that the bank was put on notice of the facts and circumstances surrounding the loans, thus obviating any claim that the bank was unaware of the defendants' actions.

As to all the loans, the defendants first contend that the acts and knowledge of the bank's authorized representative, Diminico, must be imputed to the bank. He was the loan officer and vice-president who represented the bank in the loan transactions in question, as an employee of the bank authorized to conduct its business. He retained counsel, made loans, attended the closings, and did various other things that were of the type of conduct he was hired to perform; his conduct was, at least in part, motivated by a desire to serve the plaintiff's interests. The defendants claim, on authority of *Sunrise Properties, Inc.* v. *Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald,*

*P.C.*, 425 Mass. 63, 66 (1997) (agent's knowledge acquired in the course of official duties imputed to principal); *United States* v. *Josleyn*, 206 F.3d 144, 159 (1st Cir. 2000) (test is whether the facts known were within the sphere of authority of the particular agent); and 3 Fletcher, Cyclopedia of Private Corporations § 806.10 (rev. perm. ed. 2002) (knowledge of bank's agent is knowledge of bank that agent represents in transaction performed by agent within scope of authority), that all of Diminico's acts and knowledge regarding the matters of which the bank complains are attributable to the bank as matter of law. We disagree. There was evidence from which the jury could find that Diminico had a long-standing relationship with Allen, the principal recipient or coordinator of all of the loans in question. The evidence showed that Diminico had worked for the Bank of New England (BNE) and was the loan officer supervising Allen's business there. Upon Diminico's release from BNE, Allen supported him with loans and payments. Diminico lived in a guest cottage on Allen's property. Allen was instrumental in securing Diminico's position with the plaintiff bank. Further, there was evidence from which the jury could conclude that Allen made payments in excess of $180,000 to Diminico over the period of time that the loans in question were processed, and that at least some of the payments came from the loan proceeds. On this evidence, the question whether Diminico "acted on his own and against his employer's interests" was one of fact for the jury to decide, *GTE Prod. Corp.* v. *Broadway Elec. Supply Co.*, 42 Mass. App. Ct. 293, 299 (1997), and there was more than sufficient evidence to support a jury finding that Diminico was a "faithless agent" and that his knowledge need not have been imputed to the bank. A long-standing principle in our jurisprudence holds that we will not impute to the principal notice to an agent regarding a fraudulent act in which the agent is engaged against the principal. *Allen* v. *South Boston R.R. Co.*, 150 Mass. 200, 206 (1889). The presumption is that, in circumstances such as these, where it was in Diminico's interest to keep the information from the bank, the agent would suppress the information. See Fletcher, *supra* at § 820. Finally, nothing in the record suggests that Diminico actually told anyone at the bank anything with regard to any of the loan irregularities, or of the actions of the defendants that he knew might be detrimental to the bank.

There was also evidence from which the jury might conclude that the defendants and Allen had established the relationship of attorney and client prior to the transactions underlying this action, and that they had known Diminico prior to his employment at the plaintiff bank. At the direction of Allen, Diminico retained the defendants to represent the bank in each of the transactions subject of this action, as well as virtually every other loan in which he, Diminico, was involved. The firm continued to represent Allen in numerous other transactions where the bank was not involved. The defendants had represented Allen on a continuing basis prior to the transactions in question, and had met Diminico before he joined the bank. The defendants were not innocent third parties who might be harmed in the circumstances. Contrast *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986). There was sufficient evidence to show that they were well aware that many of Diminico's and Allen's actions were adverse to the bank's interests. Indeed, on the evidence, there may well have been an independent duty on the part of the defendants to report Diminico's activities as adverse to the bank. See *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 525 n.5 (1989). See also *In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litigation.*, 794 F. Supp. 1424, 1453 (D. Ariz. 1992).

We next consider the individual loans.

*The Winship loan.* Unity Real Estate Trust (Unity), an entity controlled by Allen, agreed to sell property to the Winship Group (Winship). The original documents submitted to the bank in connection with Winship's loan application, and upon which the loan was approved, included a purchase agreement whereby Winship would pay $3.25 million for the property, and Unity would take back a second mortgage for $750,000. The bank would lend Winship $2.75 million, or eighty-five per cent of the purchase price, which was the bank's upper limit for loan to value ratio. The bank committed to the loan on this basis. At closing, with the full knowledge and assistance of the defendants, Diminico changed the documents to reflect a $3 million dollar purchase price and a $500,000 second mortgage to Unity. This change increased by a substantial amount the percentage of the purchase price that the bank advanced in its

loan. The defendants represented both the seller and the bank at closing, and did all of the paperwork. Of the proceeds, $419,319 was paid to Unity. There was testimony from the bank's expert from which the jury could find that the bank would not have made the loan under these new circumstances, and that an independent lawyer, exercising the degree and skill of an average practitioner, would have refused to close the loan under the revised terms. There was testimony that the bank's commercial mortgage loan standards allowed no more than an eighty-five per cent loan to value ratio, and that under the revised terms that ratio rose to ninety-two per cent. The evidence also showed that, had the eighty-five per cent ratio been applied to the revised sale price, the payment to Unity would have been eliminated. The jury awarded the bank $419,319, the amount disbursed to Unity, plus $92,500 for the bank's cost of funds, reduced by twenty per cent for the bank's negligence.

The defendants argue, on authority of *Girardi* v. *Gabriel*, 38 Mass. App. Ct. at 557, that the evidence was insufficient to prove, by reason of the conflict, that the defendants favored one client over another, that the bank was not told of the change, and that it would have acted differently had it been told of the change and thereby avoided the loss claimed. We think the evidence sufficient to sustain the jury's conclusion that the defendants were negligent and that their negligence was the proximate cause of the bank's loss. The question of causation is generally one of fact for the jury, and a plaintiff need only show "that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause." *Carey* v. *General Motors Corp.*, 377 Mass. 736, 740 (1979), citing *McLaughlin* v. *Bernstein*, 356 Mass. 219, 226 (1969). A jury need not find that a defendant's negligence was the only factor causing the loss, but only that "it was more probable than not that a defendant's negligence was a substantial factor in bringing about injury and harm." *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 385-386 (1980).

We think that the claim of the defendants, that the bank later ratified the loan by action of its executive committee, fails as well. Nothing in the evidence suggests that the true facts of the

revision made by Diminico, and implemented by the defendants, were disclosed to the bank; any ratification of the unauthorized acts would require the full knowledge by the bank of all material facts. See *Perkins* v. *Rich*, 11 Mass. App. Ct. 317, 322 (1981). Further, there was evidence that Diminico, with the defendants' knowledge, fraudulently submitted an old appraisal in support of the loan, where there was a new updated appraisal, at a lower value, and that the bank's commitment letter required the most recent appraisal.

*The Liberty Millworks transaction.* This loan developed because of a prior problem loan to L.A. Ferrante Corp. (Ferrante), another entity controlled by Allen. The problem: through Diminico, and with the defendants representing both Ferrante and the bank, the bank had lent $2.8 million to the corporation on an unsecured basis. Some three months later, in the process of merger, the bank was required to fix this loan. The bank entered into negotiations with Allen, represented by one of the defendants, to refinance the loan and obtain security. Allen demanded an additional $5 million in credit in return for providing security; the parties finally settled on an additional $300,000 in credit, of which $217,340 eventually went into default.

The defendants claim that, at the time of the refinancing, they represented Allen and not the bank. We think the record provides ample support for the jury's finding that attorney Levenson, one of the defendant partners, did in fact represent the bank. In addition to evidence that the defendants ordinarily represented the bank in these types of transactions, there was evidence that Levenson communicated directly with Diminico about the new loan; that he prepared all the loan documents; that he made sure that the documents were signed and recorded; and that he billed the bank for services in connection with the transaction. The existence of an attorney-client relationship is a question to be resolved by the trier of fact, and the relationship need not be express, but can be implied from the conduct of the parties. *Page* v. *Frazier*, 388 Mass. 55, 61-62 (1983).

Here, the evidence showed that the bank was forced to extend additional credit to Allen because, in representing the bank just three months prior to the transaction, Levenson had helped in arranging an unsecured $2.8 million loan to Allen. There was

testimony that it was highly unusual for a bank to extend a loan of this amount without security, especially in the circumstances. Some three months later, the bank was forced to renegotiate with Allen to obtain security for the loan, with Levenson participating in the negotiations. Here as well, the jury determined that the bank was negligent, in this instance to the extent of fifty per cent, and the damage award resulting from the loss on the additional loan to Allen was halved, to $108,674. The jury did not award anything to the bank with respect to the $2.8 million portion of the loan.

*The Peter Kelly loan.* Allen procured a loan through the bank for Peter Kelly in the amount of $1 million. Diminico issued a commitment letter in the amount of $1,020,000; of the extra $20,000, $10,000 was used to pay Allen a finder's fee. The commitment letter provided that one of the defendants would be counsel for the bank, with the understanding that the defendants did not represent the borrower. In connection with the closing, the bank required a zoning opinion with regard to the property. Another of the defendants provided the zoning opinion. That opinion erroneously failed to address the issue of off-site parking, an issue which, on evidence, substantially reduced the value of the collateral.

The defendants first contend that the bank's claim was barred by the three-year statute of limitations applicable to legal malpractice claims. See G. L. c. 260, § 4. Although some jurisdictions require that issues concerning application of the statute of limitations be decided by the trial judge as a preliminary matter, we have adopted the rule, applicable in a majority of jurisdictions, that where a plaintiff has claimed a trial by jury, any disputed issues relative to the statute of limitations ought to be decided by the jury. *Riley* v. *Presnell*, 409 Mass. 239, 247-248 (1991). We review to determine whether there was sufficient evidence before the jury to permit a finding that the bank was not aware of the injury, and whether the judge properly instructed on the law. *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. at 521.

The parties' disagreement is the familiar one as to when the claim accrued. The defendants claim that the bank should have become aware that it had suffered "appreciable harm" caused

by the defendants' conduct, *Williams* v. *Ely,* 423 Mass. 467, 473 (1996), when one of the defendants sent the zoning opinion to the bank, in which he wrote, "We represent Peter Kelly in connection with the [bank loan]," indicating a variance from the understanding that the defendants represented the bank, and not Kelly. The bank claims that the injury was not discoverable until a later time (bringing accrual within the statutory period), when the bank, in foreclosing the property, discovered the zoning and parking problem that the opinion suggested did not exist. The fact that the bank might have been alerted to a conflict in representation, in an opinion purportedly sent to Diminico, would not have made the bank aware of any appreciable harm due to error contained in the zoning opinion, whether provided by the defendants as attorneys for Kelly or the bank. On the latter issue, there was also testimony from one of the defendants to the effect that the defendants did not in fact represent Kelly, but represented the bank exclusively. On this evidence the jury could have found that there was in fact no conflict, and that the defendant did in fact represent the bank in issuing the zoning opinion.[2]

The defendants next claim that, with respect to the loss on this loan as well, there was insufficient evidence of causation and damages to support the jury's verdict. We disagree. The jury had before it evidence that the low sale price obtained by the bank on sale after foreclosure was directly attributable to the parking and zoning problem, a problem that the zoning opinion, which the bank required in connection with the loan, should have identified prior to closing. This low value represents the basis for the bank's out-of-pocket damages. We think there is ample support for the jury's finding in this regard, and that the measure of damages was appropriate.

*Cost of funds.* In connection with evidence concerning damages, the trial judge, over objection, admitted the bank's evidence of borrowing costs that it incurs in obtaining money with which to make loans. She then permitted the jury to award

---

[2]There was also some evidence that the zoning opinion may not have reached the bank prior to closing. Given that Diminico was in charge of the loan documents, this fact would not alter our opinion, as ultimately the opinion became part of the supporting documentation for the loan.

such cost of funds as an element of damages on two of the loans.[3] Prejudgment interest was also awarded on that portion of the damages representing the bank's cost of funds. After trial, the defendants moved to delete the cost of funds portion of the judgment, a motion denied by the judge. We think that the judge's rulings were in error.

In the ordinary course of its business, a bank calculates the theoretical total cost of its operations, including the cost of funds interest it pays to depositors and lenders, and uses the total cost to establish the interest rate the bank then charges to those who borrow funds. In our opinion, this rate, including the cost of funds component, reflects the value to the bank of the use of the funds that it lends. Prejudgment interest, awarded pursuant to G. L. c. 231, § 6B, is designed "to compensate a damaged party for the loss of use or the unlawful detention of money," *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 717 (1990), quoting from *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 390 (1988). Its purpose is to provide the damaged party with a return on the money it might otherwise have had were it not for the wrongdoing of the other party. *McEvoy Travel Bureau, supra.*[4] We conclude that the prejudgment interest return, in a financial setting such as this, includes whatever costs might be associated with producing the principal amount, and that an award including both "cost of funds" and prejudgment interest is duplicative. Other jurisdictions are in accord. See, e.g., *Matter of Bankers Trust Co.*, 658 F.2d 103, 111 n.4 (3d Cir. 1981) (where court awards prejudgment interest it need not consider plaintiff's cost of funds); *Trademark Research*

[3]To determine its cost of funds, the bank divided the total interest paid during a particular year on all of the bank's interest-bearing liabilities (i.e., its deposits and amounts borrowed from the Federal Home Loan Bank) by the bank's total liabilities and stockholders' equity for that year. The result was a percentage, which represented the average rate of interest the bank paid to its depositors and lenders. The bank then applied these percentages to the outstanding balances of the Winship and Kelly loans, arguing that the amount thus obtained was the cost of making these loans. The calculation did not take into consideration the bank's capital, on which it paid no interest but which was among the total funds available for loans.

[4]In this case, the value of prejudgment interest, computed at the rate of twelve per cent, far exceeded the interest charged by the bank on either of the loans.

*Corp.* v. *Maxwell Online, Inc.*, 995 F.2d 326, 341-342 (2d Cir. 1993) (recovery of cost of funds as damages and an award of prejudgment interest are duplicative). We think it was error to deny the defendants' motion to delete the cost of funds damages.[5]

*Other matters.* As to the defendants' remaining claims of error, that the judge erred in denying their motion for a credit on the bank's recovery on the loans, and that it was error to admit evidence of the Peter & Sons loan closing, the claims are without merit. As to the credit, the only evidence concerning the amount recovered from others included testimony that none of the money recovered was attributable to the losses suffered on the loans at issue. The judge was correct in ruling that the defendants, by failing to so plead, waived any mitigation defense. We think evidence of the Peter & Sons loan was also properly admitted. The bank claimed damages flowing from this loan, which was submitted to the jury, and the evidence was clearly relevant to the question whether Diminico was a "faithless agent" and whether the defendants did or did not rely on his instructions in later loans.

In its cross appeal, the bank claims error in the judge's (1) denial of the bank's motion for recusal; (2) refusal to charge the jury on the bank's count for breach of fiduciary duty; (3) refusal to admit evidence of criminal convictions; and (4) refusal to admit certain evidence of reliance and causation. We note first that the bank seems to press these claims of error only in the event that we overturn all or a portion of the jury's verdict. We find no merit to any of the bank's arguments. The decision to withdraw from a case lies within the sound discretion of the trial judge. *Commonwealth* v. *O'Connor*, 7 Mass. App. Ct. 314, 320 (1979). Nothing in the record suggests actual bias on the part of the judge, and the record amply shows that the judge searched her conscience and determined that she was free of bias or prejudice. See *Commonwealth* v. *Leventhal*, 364 Mass. 718, 721-723 (1974); *Haddad* v. *Gonzalez*, 410 Mass. 855, 860-864 (1991). As to the failure to charge on the bank's count claiming breach of fiduciary duty, we think the trial judge acted appropriately in sending the case to the jury as a negligence

---

[5]The defendants do not challenge the award of prejudgment interest on the principal damages.

claim because, in this instance, the alleged breach of fiduciary duty was encompassed in a determination whether the defendants departed from the required standard of care owed the bank. See *Van Brode Group, Inc.* v. *Bowditch & Dewey*, 36 Mass. App. Ct. 509, 516-517 & n.10 (1994). Finally, we see no error in the judge's evidentiary rulings concerning the criminal convictions or certain evidence concerning causation and damages. Whether to admit or exclude evidence here was well withing the sound discretion of the judge, and our reading of the record reveals no abuse of that discretion.

For the foregoing reasons, so much of the corrected judgment as awards the plaintiff bank amounts for cost of funds, and interest thereon, is reversed. The corrected judgment is otherwise affirmed. The orders denying the defendants' motions for judgment notwithstanding the verdict, remittitur, or for a new trial are affirmed.

*So ordered.*