**David SPENCER**

v.

**Sherwin L. KANTROVITZ, et al.**

**No. Civ.A.03–CV–12074–RG.**

United States District Court,
D. Massachusetts.

Jan. 21, 2005.

Elaine M. Kennedy, Peter M. Solomon, Londonderry, NH, for Plaintiff.

James S. Bolan, Brecher, Wyner, Simons & Bolan, LLP, Newton, MA, Lisa A. Harvey, Brecher, Wyner, Simons & Bolan, LLP, Needham, MA, for Defendants.

## *MEMORANDUM AND ORDER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

STEARNS, District Judge.

On October 27, 2003, David Spencer brought this lawsuit against his former attorney, Sherwin L. Kantrovitz, Esq., the Law Offices of Sherwin L. Kantrovitz, P.C., and a Kantrovitz legal assistant, Tony Philipon (collectively, the law firm). Spencer alleges that the law firm failed to obtain the consent of his employer's insurance carrier before settling a personal injury claim, thereby precluding Spencer from seeking additional coverage under the underinsured motorist (UIM) provisions of the employer's motor vehicle policy and his own policy. Spencer presses claims of negligence (professional malpractice) against Kantrovitz, the law firm, and Philipon, a claim of breach of contract against Kantrovitz and the law firm, and against Kantrovitz individually, a violation of the Massachusetts Consumer Protection Act, G.L. c. 93A.

The issue before the court on summary judgment is purely a question of law as the underlying facts are not in dispute.[1] Spencer, a New Hampshire resident,

---

1. The parties have submitted an Agreed State- ment of Facts.

worked as a field supervisor for Reliable Security Guard Agency, Inc. (Reliable), a New Hampshire company headquarters in Salem, New Hampshire with offices in Massachusetts. Spencer's primary duty was to conduct daily security inspections at customer sites in New Hampshire and Massachusetts. For this purpose, Reliable provided Spencer with a company-owned patrol car. Spencer typically drove 200 miles during his daily inspectional tour.

Upon being hired, Spencer did not give Reliable written notice that he retained his rights at common law to seek legal redress for any injuries that he sustained in the course of his employment. Such written notice is required by the Massachusetts Workers' Compensation Act, G.L. c. 152, § 24, if an employee is to avoid the exclusivity bar limiting recovery for employment-related injuries to benefits under the Act.

■ On April 22, 1999, while on duty, Spencer was involved in a collision in Lawrence, Massachusetts, with an automobile driven by Moncho Galvez, a citizen and resident of Massachusetts. Spencer suffered a serious back injury that eventually prevented him from working.[2] Galvez's insurance policy, issued by the Horace Mann Insurance Company (Horace Mann), provided only the statutory minimum layer of coverage of $20,000. Spencer's personal policy, issued by Geico Insurance Company (Geico) in New Hampshire, provided $100,000 in UIM coverage. The Geico policy required Spencer to obtain Geico's written consent before entering any settlement with an underinsured motorist. Reliable in turn had two relevant policies.

The first, a State Farm Insurance Company (State Farm) commercial automobile insurance policy, provided for $500,000 in UIM coverage. As was the case with Geico, State Farm required the insured to obtain State Farm's consent before settling any claim with an underinsured motorist. Reliable also carried Massachusetts workers' compensation insurance through Public Service Mutual Insurance Company (Public Service).[3]

In May of 1999, after receiving a notice of eligibility from Public Service, Spencer elected to receive Massachusetts workers' compensation benefits. Three months later, on August 3, 1999, Spencer hired Kantrovitz and the law firm to represent him in pursuing his bodily injury and workers' compensation claims.

On April 24, 2000, the law firm asked Geico for permission to settle with Galvez. On June 23, 2000, Galvez's insurer, Horace Mann, offered to pay the full $20,000 available under its policy. On July 26, 2000, Geico gave its permission to settle, and on April 27, 2001, the law firm did so with Horace Mann on Spencer's behalf. The same day, the law firm negotiated a $25,000 lump sum settlement of Spencer's workers' compensation claim. The law firm did not seek permission from State Farm to enter either settlement.

On June 19, 2001, Geico encouraged Spencer to seek UIM coverage under Reliable's State Farm policy, identifying State Farm as the "primary" UIM carrier. On July 31, 2001, the law firm asked State Farm to give retroactive approval of the settlement with Galvez. Several months

---

**2.** It is not disputed that Galvez was at fault for the accident.

**3.** Under G.L. 152, §§ 1, 25A, Reliable was required to provide Massachusetts workers' compensation coverage for any employee who worked in Massachusetts. An employee with

an out-of-state "contract for hire" is covered by the Workers' Compensation Act if he is injured while performing any part of his job in Massachusetts. *Lavoie's Case,* 334 Mass. 403, 406, 135 N.E.2d 750 (1956).

later, the law firm made a demand for the $500,000 UIM policy limit. State Farm refused permission, and on November 28, 2003, denied coverage because of Spencer's failure to obtain prior approval for the settlement. On December 31, 2001, Geico also denied UIM coverage, contending that State Farm's denial of primary coverage relieved it of any liability as the surplus carrier.[4]

Spencer alleges that but for the defendants' negligence in failing to obtain State Farm's approval of the Galvez settlement, he would be entitled to coverage under the UIM provisions of Reliable's State Farm policy and his own Geico policy. Defendants, for their part, maintain that any claim under the State Farm policy was barred by the exclusivity provision of the Massachusetts Workers' Compensation Act, and because Spencer had begun to receive Massachusetts workers' compensation benefits before the law firm was retained, neither it, nor its employees, can be held to have been a proximate cause of any injury to Spencer. Consequently, whether the defendants were in fact negligent in failing to obtain State Farm's consent to settle with Galvez is of no moment, as any recovery under the State Farm policy, according to defendants, was already barred.

Under the Massachusetts Workers' Compensation Act, "if an employee files any claim or accepts payment of compensation on account of personal injury under this chapter ... such action shall constitute a release to the insurer of all claims or demands at common law, if any, arising from the injury." G.L. c. 152 § 23. The exclusivity provision is a jurisdictional bar precluding a court of general jurisdic-

tion from even considering threshold matters involving an employer's liability. See *Lee v. International Data Group*, 55 Mass. App.Ct. 110, 114, 769 N.E.2d 761 (2002). Because the exclusivity provision is so broadly construed, there is no exemption for claims for additional benefits under an employer's motor vehicle policy. This was the issue presented in *Berger v. H.P. Hood, Inc.*, 416 Mass. 652, 624 N.E.2d 947 (1993). The Supreme Judicial Court, while acknowledging a split of authority, concluded that

we are more persuaded by those courts which have determined that the exclusivity provision of a Workers' Compensation Act bars an employee from recovering UM [underinsurance] benefits from an employer for an injury in the course of employment. See *Bouley v. Norwich*, 222 Conn. 744, 610 A.2d 1245 (1992); *Gullett v. Brown*, 307 Ark. 385, 820 S.W.2d 457 (1991). In *Bouley*, the Connecticut Supreme Court looked to the purpose behind Connecticut's uninsured motor vehicle statute and determined it was designed to be a "safety net" for motorists who are not otherwise protected. When an employee receives workers' compensation benefits, the Connecticut court concluded that "the policies underlying uninsured motorist coverage are not sufficiently compelling to override the exclusivity of the Workers' Compensation Act." *Bouley v. Norwich*, *supra* at 757, 610 A.2d 1245. We agree.

*Id.* at 655–656, 624 N.E.2d 947.

Spencer does not contend that the Massachusetts exclusivity provision would not bar any claim for UIM coverage that he might bring under Massachusetts law.[5]

---

4. In April of 2004, Spencer filed a declaratory judgment action in New Hampshire against Geico arguing that Geico is a "co-primary" carrier under New Hampshire law and there-

fore obligated to provide Spencer with UIM coverage regardless of State Farm's denial.

5. Spencer concedes in the Agreed Statement of Facts that he had not availed himself of the

Rather, he argues that had he received workers' compensation benefits in New Hampshire instead of Massachusetts, he would have been permitted by New Hampshire law to seek UIM coverage under Reliable's policy with State Farm. This is true. The New Hampshire Supreme Court, considering a factual pattern similar to the one raised in *Berger*, decided that dual recovery was not inconsistent with the immunity provisions of New Hampshire's Workers' Compensation Law.

> The workers' compensation scheme is based on a "fundamental *quid pro quo*," *Thompson v. Forest*, 136 N.H. 215, 219, 614 A.2d 1064, 1067 (1992), which is "the *tort immunity* conferred on the employer . . . [in exchange] for providing no-fault workers' compensation benefits." *Id.* at 218, 614 A.2d at 1066 (emphasis added) (quotation omitted). At issue here, however, is not tort liability, but the uninsured/underinsured motorist carrier's contractual liability.

> [T]he uninsured motorist carrier does not insure the tortfeasor against liability, but insures the employee against the risk of inadequate compensation if he is injured in an accident with an uninsured motorist. The obligation of the uninsured motorist carrier arises out of contract, although that obligation is precipitated by a third-party's tortious act.

*Merchants Mut. Ins. Group v. Orthopedic Prof. Ass'n,* 124 N.H. 648, 657–58, 480 A.2d 840, 845 (1984). The employer's tort immunity is left wholly intact by the employee's recovery of uninsured/underinsured motorist benefits, and the possibility of double recovery is offset by the availability of a workers' compensation lien. *See* RSA 281–A:13, 1(b); *Rooney v. Fireman's Fund Ins. Co.,* 138 N.H. 637, 641, 645 A.2d 52, 54–55 (1994). Thus, allowing an employee to collect benefits from the employer's uninsured/underinsured motorist insurer does not upset the fundamental *quid pro quo* upon which the Workers' Compensation Law is based.

*Hull v. Town of Plymouth,* 143 N.H. 381, 384–385, 724 A.2d 1291 (1999).[6]

■ While the thrust of Spencer's argument seems superficially plausible, its fundamental premise is flawed: Spencer was simply not eligible to receive workers' compensation benefits in New Hampshire. The New Hampshire Workers' Compensation Act states that:

I. If an employee is injured while employed elsewhere than in this state, and is injured under circumstances that would have entitled the employ-

---

exception to the exclusivity bar set forth in G.L. c. 152, § 24, that permits an employee to give written notice at the time of hiring of the intent to retain the right to sue at common law in the event of an employment-related injury.

6. Spencer also maintains that it is fundamentally unfair to apply the law in such a way that an injured employee seeking treatment is required to make a legal determination of the consequences that the acceptance of workers' compensation benefits might have on his common law rights or his rights under the law of another State. Spencer's reliance in this regard on *Thomas v. Washington Gas*

*Light Co.,* 448 U.S. 261, 286, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980), is misplaced. In *Thomas*, the Supreme Court addressed the narrow issue of whether an employee who improvidently elects to pursue workers' compensation benefits in one state may seek supplemental benefits in another state. The Court held that a state is not precluded by the Full Faith and Credit Clause from granting benefits over and above those awarded by a sister state where the more generous state would have had the power to apply its own workers' compensation law in the first instance. As Spencer is not eligible for benefits in New Hampshire, the issue of supplemental benefits does not arise.

ee ... to workers' compensation under this chapter had such employee been injured in this state, then such employee ... shall be entitled to workers' compensation as provided in this chapter:

(a) If the employee or the employee's dependents release the employer from all liability under any other law;

.    .    .    .    .

II. However, recovery of damages in an action at law or recovery of workers' compensation under the law of any other state shall bar recovery of workers' compensation under the law of this state.

N.H. R.S.A. § 281–A:12. Spencer is ineligible for New Hampshire benefits under either section of the statute. Spencer did not give Reliable a release of liability as required by Section I(a).[7] Similarly, under Section II, the fact that Spencer received benefits in Massachusetts disqualifies him from receiving benefits in New Hampshire for injuries arising from the same accident.

Spencer finally argues that it does not matter whether he would have actually received workers' compensation benefits in New Hampshire. "The issue in this motion is not whether Mr. Spencer could have received workers' compensation benefits from the State of New Hampshire for an injury occurring outside of New Hampshire without 'releas[ing]' the employer from all liability.' ... The issue is whether, but for Defendants' negligence, Mr. Spencer could have maintained a cause of action in New Hampshire to pursue Under–Insured/Uninsured Motorist ... benefits from his employer's insurance company." Plaintiff's Reply, at 1.

■ While it is not clearly articulated, this last contention comes closest to what Spencer (I believe) is attempting to argue, that because his right to UIM benefits in New Hampshire is contractually based, the tort based immunity extended to Reliable under New Hampshire law would not have shielded Reliable (State Farm) from a suit in contract for UIM coverage. A similar argument was put before the Supreme Judicial Court in *Berger* and rejected.

> The plaintiff asserts that she has a contractual right to recover UM benefits from Hood which is not precluded by the Workers' Compensation Act. "[T]he key to whether the Work[ers'] Compensation Act precludes a common law right of action lies in the nature of the injury for which plaintiff makes claim." *Foley v. Polaroid Corp.*, 381 Mass. 545, 553, 413 N.E.2d 711 (1980), quoting *Gambrell v. Kansas City Chiefs Football Club, Inc.*, 562 S.W.2d 163, 168 (Mo.App.1978).... The plaintiff's UM claim derives from the same incident, a personal injury sustained in the course of employment, which gave rise to the payment of workers' compensation.... Merely characterizing the claim as contractual does not alter the essential nature of this common law claim. Hood, if required to pay UM benefits, still would be paying a worker for an injury sustained in the course of employment.

*Berger*, 416 Mass. at 655, 624 N.E.2d 947.

■ While Spencer agrees that a dual recovery is not possible under Massachusetts law, he argues that under choice of law principles, he would have had the benefit of New Hampshire rather than Massachusetts law in any dispute with State Farm (but for the bar to suit created by the law firm's failure to obtain State

---

**7.** Even if, as Spencer argues, the release can be provided post-accident, rather than at the time the employment contract is made (as is the case under the Massachusetts law), Spencer is disqualified by Section II by virtue of having accepted Massachusetts benefits.

Farm's consent to settle with Galvez). This is a dubious proposition. Both Massachusetts and New Hampshire follow the "functional" approach of *Restatement (Second) of Conflict of Laws* (1971). *See Bushkin Assoc., Inc. v. Raytheon Co.*, 393 Mass. 622, 631–632, 473 N.E.2d 662 (1985); *Cecere v. Aetna Ins. Co.*, 145 N.H. 660, 766 A.2d 696, 699–700 (2001). Under this approach, in the absence of a contractually binding choice of law clause or agreement,[8] a court looks to the law of the state with the most significant relationship to the transaction and the parties. Here the most that can be said is that Spencer is a citizen of New Hampshire, his employer operates in Massachusetts from a base in New Hampshire, and the State Farm commercial vehicle policy was sold to Reliable (presumably) in New Hampshire. On the other hand, Spencer's injury arose from an accident that occurred in Massachusetts, the layer of insurance (Horace Mann) triggering the underinsured claim was paid under a policy the limits of which were dictated by Massachusetts law, and benefits were paid to Spencer from the Massachusetts Workers' Compensation Fund pursuant to the terms of a Massachusetts workers' compensation policy imposed on Spencer's employer by Massachusetts law. Weighing this equation, I am confident that a court in New Hampshire faced with a freestanding suit seeking UIM benefits from State Farm would conclude that Massachusetts law governs and that Reliable (State Farm) is immune from suit for UIM

coverage under the exclusivity provision of the Massachusetts Workers' Compensation Act.[9] No matter how much Spencer wishes it otherwise, the bell that cannot be unrung is his decision to accept workers' compensation benefits in Massachusetts. That decision was made before the law firm was hired. Thus, the failure of the law firm to seek State Farm's consent before settling with Galvez, if it was negligence—one would think it was—could not have been the legal cause of any injury to Spencer. As is the case with negligence generally, to sustain a legal malpractice action, a plaintiff must show more than a breach of a duty of care; he must also show that the defendant's act or omission was a substantial factor in causing him harm. *Girardi v. Gabriel*, 38 Mass.App. Ct. 553, 557, 649 N.E.2d 805 (1995). This is a showing that Spencer, through no particular fault of his own, cannot make.[10]

## ORDER

For the foregoing reasons, defendants' motion for summary judgment is *ALLOWED*.

SO ORDERED.

---

8. The State Farm policy is silent on the subject of the law to be applied in the event of a conflict.

9. While it is true that State Farm did not cite Spencer's acceptance of Massachusetts workers' compensation benefits in denying coverage, but rather the failure of the law firm to obtain its consent prior to the settlement with Galvez, the argument that State Farm would not therefore have invoked the Massachusetts exclusivity provision as a further ground for

denying coverage is at odds with the court's experience with insurers and their approach to coverage issues in general.

10. For the same reason, Spencer's breach of contract claims also fail. *See Greany v. McCormick*, 273 Mass. 250, 253, 173 N.E. 411 (1930). So too, in the absence of a viable negligence or contract claim, there can be no recovery under Chapter 93A.