Sikora, Mitchell J., J.

RULING

Upon consideration of the pleadings, all motion and opposition materials, and argument by all counsel at the hearing, the court ALLOWS the motion of third-party defendants Hemy Knoblock, Esquire and the law firm of Pepe & Hazard, LLP, to dismiss all claims of the third-party complaint of defendants/third-party plaintiffs Philip M. Giordano, Esquire and Giordano & Company, P.C., pursuant to Mass.R.Civ.P. 12(b)(6) for failure to state a cause of action.

REASONING

Nature of the Case

In this civil action, JMC Venture Partners (“JMC”) and Woodlaken, LLC (“Woodlaken”) bring claims against Mr. W. Russell Lee (“Mr. Lee”), Mr. Philip M. Giordano, Esq. (“Attorney Giordano”), and Giordano & Company, P.C. under theories of fraudulent misrepresentation, breach of the implied covenant of good faith and fair dealing, Chapter 93A, and negligent misrepresentation. In turn, Attorney Giordano and Giordano & Company have filed claims as third-party plaintiffs under G.L.c. 23 IB, §1 against Mr. Hemy Knoblock (“Attorney Knoblock”) and Pepe & Hazard, LLP seeking contribution. Attorney Knoblock and Pepe & Hazard now move to dismiss the third-party complaint pursuant to MASS.R.Civ.P. 12(b)(6) and 14(a).

Background

In the spring 2005, JJT, Inc. (“JJT’), a digital imaging company based in Plymouth, Massachusetts, approached JMC about the possibility of it extending a loan to provide funding for JJTs business operations. At that time, Mr. Lee served as President and CEO of JJT. On its own initiative, JMC invited Woodlaken to join it as a co-investor in JJT. Negotiations ensued, and on April 11, 2005, Mr. Lee met with representatives of JMC and Woodlaken (“the Lenders”) to close the deal.
At the closing, Mr. Lee was accompanied by JJTs corporate counsel, Attorney Giordano of Giordano & Company, P.C., and the Lenders were joined by their counsel, Attorney Knoblock of Pepe & Hazard, LLP. The parties then reviewed JJTs schedule of financial disclosures. In this regard, Mr. Lee represented that:
JJTs financial records and capitalization tables were accurate, there was no litigation pending against the Company, the Company’s various tax obligations had been timely paid and were not delinquent, the Company had no outstanding loans or obligations other than those which he had disclosed to the Lenders, and no third party was materially infringing on the Company’s intellectual property rights. [Uncontradicted allegation of paragraph 12 of plaintiff JMC’s complaint.]
Similarly, the parties’ attorneys reviewed the required disclosures as follows:
Attorney Knoblock reviewed each section of the Agreement with Lee and Giordano, asking repeatedly if everything had been disclosed. During this meeting, Giordano specifically represented that there was no outstanding litigation or threat of litigation that was required to be disclosed in Schedule 4.6 ... or warranted disclosure. [Uncontradicted allegation of paragraph 65 of plaintiff JMC’s complaint.]
Attorney Knoblock requested that Attorney Giordano reduce these representations to the form of an opinion letter. He refused to do so, specifically declining to make representations concerning any litigation involving JJT. Instead, Attorney Giordano offered a much more limited letter, which Attorney Knoblock accepted. Satisfied by the foregoing, the Lenders extended a significant amount of money to JJT.
Six weeks after the closing, the Lenders learned of a potential infringement on JJT’s intellectual property rights by JJTs largest customer, Datatrac, Inc. Accordingly, the Lenders issued a notice of default and called in the loan. JJT, however, was unable to repay the accelerated loan. Therefore, the Lenders agreed to forebear on the default and renegotiated the terms of the loan. As a result, Mr. Lee stepped down as President and CEO of JJT, and the Lenders extended JJT a second loan.
Before the second closing, Mr. Lee again assured the Lenders that the disclosures he had previously made were accurate, the potential infringement by Datatrac aside. Subsequently, Attorneys Knoblock and Giordano spoke over the telephone. Attorney Knoblock asked Attorney Giordano whether the disclosure schedules needed to be updated. Attorney Giordano responded that there was nothing that required or warranted disclosure other than that which had already been disclosed. On July 12, 2005, the second closing occurred. The Lenders released additional funds to JJT, bringing the total amount disbursed to $1.6 million.
In the following months, additional inconsistencies in JJTs disclosure schedules became apparent. Con *518 traiy to prior representations, the Lenders learned that JJT owed delinquent taxes to the State of Texas and the Internal Revenue Service, and had failed to disclose a number of other debts. JJT had also failed to disclose its involvement in litigation in the states of Texas and Massachusetts. Therefore, on December 28, 2005, the Lenders filed the present action in Suffolk County Superior Court against Mr. Lee, Attorney Giordano, and Giordano & Company. Subsequently, on February 24,2006, Attorney Giordano and Giordano & Company filed the instant third-party complaint against Attorney Knoblock and Pepe & Hazard, seeking contribution under G.L.c. 231B, §1 and denying that they made any representations beyond those contained in Attorney Giordano’s opinion letter. The Giordano parties allege negligent malpractice. Their complaint conspicuously lacks subsidiary allegations specifying the elements of substandard practice.

Discussion

This matter is before the court pursuant to Mass.R.Civ.P. 12(b)(6) on the motion of JMC and Woodlaken to dismiss the third-party complaint of Attorney Giordano and Giordano & Company. For purposes of this motion, the court will “accept as true the allegations in the [third-party] complaint, and draw all reasonable inferences in favor of the party whose claims are the subject of the motion.” Fairneny v. Savrogan Co., 422 Mass. 469, 470 (1996).
Dismissals on the basis of the pleadings “before the facts have been found, are discouraged.” Gennari v. City of Revere, 23 Mass.App.Ct. 979, 980 (1987). The Court may dismiss a complaint for the failure to state a claim upon which relief may be granted only if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 97-98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In this regard, the plaintiffs burden is “relatively light.” Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998). He need not advance the correct legal theory, but must merely provide a “short and plain statement of the claim showing that the pleader is entitled to relief.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979), quoting Mass.R.Civ.P. 8(a)(1). Doubt as to whether the claim is provable or credible is not a proper basis for dismissal. See Wrighton v. Spaulding, 20 Mass.App.Ct. 70, 72 (1985). On the other hand, “[i]f a complaint lacks merit, the defendant should take the appropriate steps to cause the matter to be brought within the purview of rule 56(b) . . .” Id. In addition, the court need not dismiss a claim simply because it alleges a new theory of liability. See New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30 (1988). “[I]t is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader’s suppositions.” Id. Accordingly, the court must construe pleadings so as to do substantial justice. See Ourfalian v. Aro Mfg. Co., 31 Mass.App.Ct. 294, 296 (1991).

1. Right of Contribution

“[W]here two or more persons become liable in tort for the same injury to a person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.” G.L.c. 231B, §1(a);[1] see also Mass.R.Civ.P. 14(a). The purpose of this right is to eliminate “the unfairness of allowing a disproportionate share of a plaintiffs recovery to be borne by one of several joint tortfeasors.” McGrath v. Stanley, 397 Mass. 775, 780-81 (1986); accord Berube v. City of Northhampton, 413 Mass. 635, 638 (1992). “The object to be accomplished is a more equitable distribution of that burden among those liable in tort for the same injury.” Id. at 781. Before the enactment of this chapter, the Massachusetts rule was that there could be no contribution among tortfeasors. See O'Mara v. H.P. Hood & Sons, Inc., 359 Mass. 235, 237 (1971). But, in enacting Chapter 231B, the Legislature created the right of contribution, and premised it upon a finding of liability in tort. See Berube, 413 Mass. at 638; McGrath, 397 Mass. at 781.
“[T]he term ‘liable in tort’ used in §l(a) is to be accorded a broad interpretation.” McGrath, 397 Mass. at 781. In addition, the right to contribution is a derivative cause of action; the third-party defendant must be one who could have been held directly liable to the plaintiff if the plaintiff had brought an action against him directly for the tortious activity. See McGrath, 397 Mass. at 781; Berube, 413 Mass. at 639 (noting that the right to contribution arises only where the third-party defendant is or was once liable to the plaintiff, rather than merely at fault). Finally, the theory of liability among the tortfeasors need not be uniform; the right to contribution exists even where the theories of liability are different among joint tortfeasors. See Wolfe v. Ford Motor Co., 386 Mass. 95, 100 (1982) (allowing contribution where the defendant was found liable under a theory of negligence and the third-party defendant was found liable for breach of the implied warranty of merchantability).
In Maddocks v. Ricker, 403 Mass. 592 (1988), the Supreme Judicial Court addressed a claim for contribution involving parties similar to those in the case at bar. There, Maddocks alleged that work which a construction company had performed on his behalf had been done in a careless and unworkmanlike manner. Maddocks, 403 Mass. at 594. However, his attorneys, Donald E. and Richard Ricker, failed to commence legal proceedings. Id. Therefore, Maddocks found new counsel in James W. Casson, III and filed actions against the construction company and both Attorneys Ricker. Id. at 593-94. Shortly thereafter, the construction company obtained summary judgment on the basis of expiration of the statute of limitations. Id. at *519 594. The defendant attorneys then successfully moved to implead Attorney Casson on the ground that he failed to oppose the construction company’s motion. Id. at 595. Recognizing the now divergent interests between Attorney Casson and his client, the trial court disqualified Attorney Casson from continuing his representation. Id. Affirming the addition of Attorney Casson as a third-party defendant and his disqualification from representing Maddocks, the Supreme Judicial Court held that “(w]hen Lawyer II brings an action for malpractice on behalf of a client against Lawyer I, Lawyer II is not immunized from liability to Lawyer I for contribution if the negligence of each caused the same injuiy to the client.” Id. at 601-02. Thus, the court affirmed the right of prior attorneys to implead a former client’s current attorney in a claim for contribution in the context of a malpractice claim. Id.
In contrast to Maddocks, most jurisdictions and the Restatements have found policy considerations sufficiently persuasive to preclude contribution claims against a client’s present attorney or an adversary’s attorney. See RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE §7.15, at 920 (2006 ed.); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §53(i) (2000); see, e.g. Holland v. Thacher, 199 Cal.Rptr. 247, 250-51 (Cal.App.Ct. 1988); Stone v. Satriana, 41 P.3d 705, 709-10 (Colo. 2002); Gauthier v. Kearns, 780 A.2d 1016, 1023 (Conn.Super.Ct. 2001); Waldman v. Levine, 544 A.2d 683, 693 (D.C.App.Ct. 1988); Melrose Floor Co., Inc. v. Lechner, 435 N.W.2d 90, 91-92 (Minn.App.Ct. 1989); Mirch v. Frank, 295 F.Sup.2d 1180, 1186 (D.Nev. 2003); Olds v. Donnelly, 696 A.2d 633, 643 (N.J. 1997); Mentzer & Rhey, Inc. v. Ferrari, 532 A.2d 484, 486-87 (Pa.Super.Ct. 1987); Hughes v. Housley, 599 P.2d 1250, 1253 (Utah 1979); Erickson v. Erickson, 849 F.Sup. 453 (S.D.W.Va. 1994). Typically, the following four policy considerations are cited:
First, the potential of a claim interferes with a lawyer’s obligation of undivided loyalty. Second, allowing a claim creates a conflict of interest with the client and potential problems for the lawyer as a witness, which may require withdrawal or disqualification. Third, the lawyer’s independent judgment is adversely influenced by the risk of a claim, interfering with the lawyer’s counseling role. Fourth, the lawyer’s need to defend a contribution or indemnity claim may imperil the client’s confidences.
MALLEN & SMITH, supra, at 898. Nonetheless, a significant number of well-reasoned decisions concur with the Supreme Judicial Court’s holding in Maddocks. See, e.g., Goran v. Glieberman, 659 N.E.2d 56, 61 (Ill.App.Ct. 1995) (holding contribution claim against attorney not contrary to Illinois public policy); Parler & Wobber v. Miles & Strockbridge, 756 A.2d 526, 544 (Md. 2000) (finding no exception in the Uniform Act for the protection of attorney-client privilege); Sheetz v. Bowles Rice McDavid Graff & Love, PLLC, 547 S.E.2d 256, 268 (W.Va. 2001) (noting that public policy considerations exist on both sides of the issue); Schauer v. Joyce, 429 N.E.2d 83, 85 (N.Y. 1981) (allowing a claim for contribution without discussion of public policy concerns); Brown v. LaChance, 477 N.W.2d 296, 301-02 (Wis. 1991) (rejecting an attorney-client privilege exception to the right to contribution); Pappas v. Holloway, 787 P.2d 30, 36-37 (Wash. 1990) (balancing attorney-client privilege and the right to contribution in favor of the client). But, because these holdings place the attorney-client privilege at risk, “practical judicial measures must be taken to balance the contribution right against the attorney-client privilege.” Maddocks, 403 Mass. at 589. “The judge should be alert to the possibility that Lawyer I is using the cross-complaint as a tactical device to disqualify Lawyer II.” Id. In other words, the merits of the cross-complaint require thorough scrutiny without unfair aggravation of the plaintiffs burden.
In the case at bar, Attorney Giordano alleges that Attorney Knoblock and Pepe & Hazard are jointly liable for the Lenders’ damages because they were negligent in failing to uncover Mr. Lee’s misrepresentations and advising the Lenders to enter the loan agreement, despite Attorney Giordano’s refusal to incorporate in an opinion letter certain representations made by Mr. Lee. Thus, Attorney Giordano is claiming that Attorney Knoblock and Pepe & Hazard were negligent in performing their due diligence, i.e., they failed to detect Mr. Lee’s malfeasance, and consequently, are jointly liable for the losses to the Lenders. In order to defend themselves against this claim, Attorney Knoblock and Pepe & Hazard contend that they “would have to show exactly what diligence they performed and what advice they gave to the Lenders.” In effect, they would have to violate the Lenders’ attorney-client privilege. As discussed above, in Maddocks the Supreme Judicial Court weighed this concern against policies underlying the right to contribution. Though it is contrary to the majority rule, the law on this point is clear in the Commonwealth: an attorney may not insulate himself from a prima facie claim for contribution by taking refuge in the attorney-client privilege. See Maddocks, 403 Mass, at 601-02. Because the policy concerns regarding the privilege in the case at bar are substantially the same as those in Maddocks, I find no reason to distinguish the case.
The primary difference between Maddocks and the case at bar is the circumstance that in Maddocks both the third-party plaintiff and the third-party defendant had once represented Mr. Maddocks. This fact, however, is merely tangential. The core issue remains the compatibility of the attorney-client privilege and the right to contribution. While Mr. Maddocks’ decision to bring a malpractice action against his former attorneys implies a voluntary waiver of the attorney-client *520 privilege between them, the decision in no way implied his voluntary waiver of that privilege with his subsequent attorney. Nonetheless, the court allowed the contribution claim to stand. Another difference is that the theories of liability in Maddocks between plaintiff and defendant and between third-party plaintiff and third-party defendant were the same. Both were based on theories of malpractice. Here, the claims are based on different theories. The Lenders’ claims are based on fraud and misrepresentation, while the third-party complaint is based on malpractice. But again, this difference is of little significance. The right to contribution exists even where the theories of liability differ among joint tortfeasors. See Wolfe, 386 Mass. at 100. For these reasons, the situation before the court in Maddocks is sufficiently analogous to furnish binding precedent for the present action. Consequently, the third-party complaint must stand so long as it presents a prima facie claim for contribution.
2. Legal Malpractice
To determine whether the third-party complaint presents a prima facie claim for contribution, we must determine whether Attorney Knoblock and Pepe & Hazard could have been held directly liable to the Lenders if the Lenders had brought an action against them directly for alleged negligent advice and faulty due diligence. To establish a prima facie claim of legal malpractice, “(t]he principles and proof of causation ... do not differ from those governing an ordinary negligence case.” Girardi v. Gabriel 38 Mass.App.Ct. 553, 557 (1995), quoting RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE §8.3, at 411 (3d ed. 1989); accord Frullo v. Landenberger, 61 Mass.App.Ct. 814, 817 (2004). A plaintiff must show that in addition to the attorney-client relationship, the defendant failed to exercise reasonable care and skill in handling the plaintiffs case, that the plaintiff incurred a loss, and that the defendant’s malpractice was the proximate cause of the loss. See DiPiero v. Goodman, 14 Mass.App.Ct. 929, 929 (1982). But, an attorney will not be held liable for a client’s loss “simply because another attorney, or even many other attorneys, would not have made the same recommendation under the circumstances.” Meyer v. Wagner, 429 Mass. 410, 419-20 (1999); accord Coined v. Rosen, Goldberg, Slavet, Levinson & Wekstein, P.C., 25 Mass.App.Ct. 107, 111 (1987); see also RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE §30.28, at 549 (2006 ed.). “The mere possibility that the defendants’ negligence caused the harm is not sufficient to take the issue to the jury.” Girardi 38 Mass.App.Ct. at 560.
Again, for the purposes of this motion, I must accept as true the allegations in the third-party complaint and draw all reasonable inferences in favor of Attorney Giordano and Giordano & Company. But even under this deferential review, the third-party complaint lacks the necessary specification of causal negligence by Attorney Knoblock. Rather, it hinges entirely upon the conclusoiy allegation that Knoblock did not uncover Mr. Lee’s misrepresentations and that his performance must therefore have fallen below the standard of reasonable care. Without specific allegations of the availability of such information or of failed professional caution by Knoblock, the third-party complaint fails to state a claim.
The facts indicate that Attorney Knoblock repeatedly sought reassurances in regard to Mr. Lee’s disclosure schedules. At the first closing, he reviewed each section of the disclosure schedules with Mr. Lee and Attorney Giordano, and asked repeatedly whether everything had been disclosed. Subsequently, the attorneys had a telephone conversation concerning the loan; again, Attorney Knoblock asked Attorney Giordano whether the disclosure schedules needed to be updated. Next, Attorney Knoblock prepared an opinion letter for Attorney Giordano to sign. Although Attorney Giordano declined to sign it, he did sign a more limited opinion letter which he prepared himself. Finally, Attorney Giordano, himself, denies knowledge of Mr. Lee’s misrepresentations.
In these circumstances, it may be that other attorneys would have advised the Lenders not to extend funds to Mr. Lee. That alternative does not constitute the required specification of causal negligence. The third-party complaint does not allege that Attorney Knoblock failed to investigate, failed to take standard precautions, or failed to appreciate available information signaling misrepresentation. It simply suggests that Attorney Knoblock’s performance must have been negligent because he did not uncover the misrepresentations. Thus, the claim rests solely on the result of Attorney Knoblock’s performance. It remains conclusoiy and speculative. For these reasons, no allegations explain that the Lenders’ losses more likely than not resulted from the fault of Attorney Knoblock. Contrast Frullo, 61 Mass.App.Ct. at 817 (holding that attorney breached duty to client by ignoring client’s instruction to conduct particular discovery).

Conclusion

These reasons warrant the dismissal of the third-party complaint. The Giordano parties have now had their opportunity to state an improbable claim. Any motion for reconsideration or retrospective attempts at amendment will not be welcome.

By enacting Chapter 23 IB in the year 1962, the Legislature adopted, with minor changes, the Uniform Contribution Among Tortfeasors Act ("the Uniform Act”), as revised in 1955. See G.L.c. 231B; O'Mara v. H.P. Hood. & Sons, Inc., 359 Mass. 235, 237 (1971). Whereas section 1(a) of Chapter 231B grants a right of contribution “where two or more persons become jointly liable in tort for the same injury to person or property,” the Uniform Act refers to persons “jointly or severally” liable. See O’Mara, 359 Mass, at 237. Other Uniform Act jurisdictions include Arizona, Colorado, Florida, Nevada, North Carolina, North Dakota, Ohio, Oklahoma, South Carolina, and Tennessee. See G.L.c. 231B.