## COMMONWEALTH *VS.* CORBY ADKINSON.

Middlesex. April 8, 2004. - August 13, 2004.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Child Abuse. Practice, Criminal,* Waiver of trial by jury, Disqualification of judge, Access to witnesses, New trial. *Judge. Constitutional Law,* Access to witness. *Minor,* Custody.

This court concluded that a criminal defendant's waiver of trial by jury was valid, where, contrary to the defendant's contention, the trial judge, who also decided the codefendant's motion to suppress her statement, did in fact address the question of recusal at the time of the jury waiver colloquy; where there was no record support for the defendant's assertion of lack of knowledge concerning the basis for the denial of the codefendant's motion to suppress; and where the defendant offered no evidence to support his burden of demonstrating a bias or prejudice arising from an extrajudicial source requiring the judge to recuse himself. [412-416]

At the trial of indictments for child abuse, there was no error in the prosecution's failure to summons the children involved for purposes of engaging them in a colloquy regarding the defendant's request that his expert be allowed to interview them, where it was within the authority of the Department of Social Services (department), as custodian of the children, to refuse to allow one or more of the children to be interviewed by the defendant, his attorney, or his experts, and where nothing in the record suggested that the department was acting as an agent for the prosecution in doing so. [416-420]

A Superior Court judge did not err in denying a criminal defendant's request for a voir dire as to the techniques used by the Commonwealth when interviewing the minor victims, as there was no indication that the judge applied the law incorrectly in assessing those techniques or the reliability of the children's testimony. [420-421]

This court did not consider a request for review of the denial of a criminal defendant's motion for a new trial, where the motion was not properly before this court. [421-422]

INDICTMENTS found and returned in the Superior Court Department, twenty-five on February 14, 1996, and two on July 25, 1996, respectively.

A pretrial motion to suppress evidence was heard by *Robert A. Barton,* J., and the case was heard by him; a motion for a

new trial, filed on November 26, 2001, was heard by *Thomas E. Connolly*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph F. Krowski* for the defendant.

*Kevin J. Curtin*, Assistant District Attorney (*Martha Coakley*, District Attorney, with him) for the Commonwealth.

The following submitted briefs for amici curiae:

*Carlo Obligato*, Committee for Public Counsel Services, for Committee for Public Counsel Services.

*Thomas F. Reilly*, Attorney General, *Virginia A. Peel*, Special Assistant Attorney General, & *Brian R. Pariser* for Department of Social Services.

SPINA, J. After a jury-waived trial in the Superior Court,[1] the defendant was convicted on multiple indictments[2] alleging various types of abuse of his four minor sons, as well as drug-related offenses. The crimes involving the defendant's sons occurred between May, 1995, and November 23, 1995. On November 23, 1995, Thanksgiving Day, one of the sons telephoned 911 and asked for help. Police and representatives of the Department of Social Services (department) arrived and the children were removed from the home. They were taken to a local hospital, where all four gave urine samples that tested positive for cocaine. On November 24, 1995, the department filed a care and protection petition and was awarded temporary custody of the children, who were then placed in foster care. Over the next several months the children made disclosures that gave rise to these indictments.

On appeal the defendant claims error in (1) the judge's failure to raise the issue of recusal during the colloquy on the defendant's waiver of trial by jury; (2) the denial of access to child witnesses in the custody of the department; (3) the denial of a voir dire to determine whether the statements made by the child witnesses were the product of suggestive or coercive

---

[1] A codefendant, the defendant's wife, also waived trial by jury and was tried with the defendant. Her appeal is not before us.

[2] The judge ordered required findings of not guilty on six indictments at the close of the Commonwealth's evidence.

interview techniques by agents of the Commonwealth; and (4) the denial of his motion for a new trial. We transferred the case here on our own motion, and now affirm the convictions.[3]

1. *Waiver of trial by jury.* The defendant claims that his waiver of trial by jury was invalid because the trial judge, who also decided the codefendant's motion to suppress her statement, failed during the jury waiver colloquy to discuss the question of his recusal and the fact that he denied the motion to suppress on the basis that he found the testimony of the defendant and the codefendant at the motion hearing to be not credible. The defendant contends that he was unaware of the basis on which the judge decided the motion to suppress because the judge's written decision was not docketed in his case, but rather in the codefendant's case (it was her motion to suppress). He further asserts that there is "[n]o logical reason" he would have agreed to waive his right to jury trial and face trial by a judge who previously had found him not credible.

There is no record support for the defendant's assertion of lack of knowledge concerning the basis for the denial of the codefendant's motion to suppress. He has filed no affidavit as to a lack of knowledge, and he did not file a motion for a new trial raising this issue. There is, on the other hand, record support that he probably did know the basis for the denial of the motion at the time of his jury waiver. On December 19, 1996, at the outset of the hearing on the motion to suppress, the defendant requested through counsel that he be allowed to be present throughout the hearing because he and the codefendant intended to present a "unified defense." The judge was informed that both counsel had been instructed by their respective clients that no client meeting could take place unless both clients were present. The judge decided the motion to suppress on January 21, 1997. At a different motion hearing on March 14, 1997, the judge stated in the presence of the defendant that the motion to suppress had been decided and that copies of the decision had been provided to counsel. On May 5, 1997, against the advice of counsel, the defendant waived his right under *Bruton* v. *United States*, 391 U.S. 123 (1968), to be tried separately from

[3]We acknowledge the amicus briefs filed by the Committee for Public Counsel Services and the Department of Social Services.

his codefendant, stating that he was doing so as part of their "unified defense." Immediately following his waiver of severance, the defendant and the codefendant waived their right to trial by jury. We infer from these circumstances that, as of the time the defendant waived his right to trial by jury, he had learned of the details of the denial of the motion to suppress either through the codefendant, in the course of their "unified defense," or from his own counsel, whom the defendant knew had received a copy of the judge's decision.

In addition, the defendant could have gleaned the basis for the denial of the motion to suppress from the circumstances of the hearing and from his knowledge that the motion had been denied. The judge allowed the defendant to attend the entire suppression hearing, which the defendant did. The motion was based in part on assertions that the codefendant did not make a valid waiver of her Miranda rights or make a voluntary statement because she was under the influence of alcohol and drugs, and because a police officer threatened that she would never see her children if she did not waive her Miranda rights; it also was based on a claim that the codefendant had asked to telephone her attorney from her home at the time of arrest and again from the police station, and that the police denied her access to her attorney.

The hearing on the motion to suppress was a credibility battle. The defendant testified about the codefendant's consumption of alcohol, marijuana, and cocaine shortly before her arrest, and her request to communicate with her attorney at the time of her arrest. The codefendant gave testimony that was consistent with that of the defendant, and she further testified to the course of her interrogation at the police station. Police witnesses, on the other hand, contradicted the defendant and the codefendant in virtually every material respect. They testified that the codefendant had not asked to speak with her attorney, that she had not been threatened with the loss of her children, and that she did not appear under the influence of alcohol or drugs at the time of her arrest, at the time she signed a waiver of her Miranda rights, or when she gave her statement. The defendant, the codefendant, and the police witnesses were cross-examined vigorously, and the defendant and codefendant were present

when the assistant district attorney argued that their testimony was not credible. The judge stated that if he believed the codefendant asked for her attorney, "then the case is over." Based on this information contained in the record, the defendant had to know that the decision on the motion would turn on credibility.

At the colloquy on the defendant's jury waiver, the judge pointedly reminded the defendant that he had denied the motion to suppress. He specifically stated he had found beyond a reasonable doubt that the codefendant's statement was voluntary and that there was "compliance with" the Miranda rights. He further stated he had found no violation of anyone's constitutional rights. Although the judge's decision was docketed in the codefendant's case, in these circumstances the defendant had to know that the decision on the motion was based on the judge's rejection of his testimony and that of the codefendant.

We reject the defendant's contention that there is no logical reason why he would waive trial by jury in the circumstances. It is entirely logical "to believe that an experienced judge would evaluate an alleged sexual assault upon a child[, as here,] more dispassionately than would a jury." *Commonwealth* v. *Savage*, 51 Mass. App. Ct. 500, 506 (2001). That the defense strategy included a jury-waived trial by this particular judge is underscored by counsel's comment when he stated shortly after the jury waiver colloquy: "[T]hat's why we're going jury waived, Your Honor, because we know we'll get a fair trial in *this* session" (emphasis added).

Contrary to the defendant's claim, the judge did address the question of recusal at the time of the jury waiver colloquy. As discussed above, the judge specifically reminded the defendant that he had decided the motion to suppress the codefendant's statement, finding no constitutional violation and that the statement had been made voluntarily. He told the defendant that he would "do my level best to disregard my . . . preliminary ruling, and will consider that issue [Miranda waiver and voluntariness] anew if I am the finder of fact in a jury-waived trial." The judge asked the defendant whether he understood that "the same judge who heard the preliminary motion [to suppress] is going to be the judge in the jury-waived trial." The defendant

stated that he understood. Although he did not use the precise term, there can be no doubt that the judge was referring to the question of recusal, and the defendant acknowledged that he understood what was being asked of the judge when presiding over his jury waived trial. After the jury waiver was accepted, the judge even repeated his commitment to consider the issues of a Miranda waiver and voluntariness on a clean slate.

The defendant correctly notes that the judge was not required to recuse himself from hearing the case jury waived merely because he previously heard the suppression motion. See *Commonwealth* v. *Coyne*, 372 Mass. 599, 601-603 (1977). Generally, recusal is a matter left to the discretion of the judge. *Id.* at 602. To show that a judge abused his discretion by failing to recuse himself, a defendant ordinarily must show that the judge demonstrated a bias or prejudice arising from an extrajudicial source, and not from something learned from participation in the case. See *Liteky* v. *United States*, 510 U.S. 540, 551 (1994) ("[N]ot subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant"); *Fogarty* v. *Commonwealth*, 406 Mass. 103, 111 (1989). The defendant has offered no evidence to support his burden.

The defendant does not allege, and the record does not reveal, that the judge acted partially in the course of the trial and thus deprived the defendant of a fair trial. See *Commonwealth* v. *Gogan*, 389 Mass. 255, 258-260 (1983). The judge assured the defendant that he would act fairly and impartially, see *Lena* v. *Commonwealth*, 369 Mass. 571, 575-576 (1976), and it has not been shown that he should have stepped down.

The judge conducted a colloquy with the defendant, conformably with *Ciummei* v. *Commonwealth*, 378 Mass. 504, 509-510 (1979), on the defendant's offer to waive trial by jury. The judge found that the defendant waived his right to trial by jury knowingly, intelligently, and voluntarily. The record supports the judge's findings. The defendant does not challenge the colloquy procedure or the judge's findings, other than as previ-

ously discussed. The defendant elected to proceed jury waived before this particular judge. He did not request a trial before a different judge. See *Commonwealth* v. *Coyne, supra* at 603. He may not now be heard to complain about his trial strategy because of his disappointment in the outcome.

The defendant's parallel claim concerning his waiver of the right to a separate trial under *Bruton* v. *United States*, 391 U.S. 123 (1968), is similarly unavailing. Moreover, the *Bruton* issue evaporated when the codefendant testified at the trial. See *Commonwealth* v. *Hicks*, 377 Mass. 1, 4-5 (1979).

2. *Access to child witnesses in the department custody.* The defendant filed a motion to allow one of his experts to interview the child witnesses. At the hearing on the motion, the prosecutor represented that the children were minors, none older than twelve years, and in the custody of the department. The judge ordered a colloquy, pursuant to *Commonwealth* v. *Carita*, 356 Mass. 132, 142-143 (1969), and *Commonwealth* v. *Balliro*, 349 Mass. 505, 515-518 (1965), and asked that a department representative be present so that he could advise that person of his or her rights to consent or not consent, on behalf of the children, to an interview. Counsel for the defendant subsequently reported to the judge that he spoke with the department caseworker for the children, who informed him that if she were instructed by the judge pursuant to *Commonwealth* v. *Carita, supra*, she would deny access to the children. Counsel indicated that, in view of his conversation with the caseworker, he saw no need for a *Carita* colloquy. The defendant contends for the first time on appeal that, because the children were in the custody of the Commonwealth, it was error to fail to summons them and their guardian ad litem (in the care and protection proceeding) to explain that the defendant had requested an opportunity for his expert to interview the children, and that the decision to be interviewed or not was theirs to make.

"Witnesses belong neither to the Commonwealth nor to the defence . . . and should be available to both parties in the preparation of their cases." *Commonwealth* v. *Balliro, supra* at 516. "Witnesses may decline of their own will to talk to either side or to both; but their choice should not be constrained, and when it is the State that interferes, we consider the vice to be

constitutional . . . ." *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 658 (1979). A defendant has a "right [to] an opportunity to interview prospective witnesses held in the custody of the Commonwealth." *Commonwealth* v. *Balliro, supra.* Witnesses in the custody of the Commonwealth who have not directly communicated to counsel a desire not to be interviewed should be "brought to court and instructed on his or her rights to consent or not to consent to an interview." *Commonwealth* v. *Carita, supra* at 143.

The analysis in this case does not begin with the question of custody, as the defendant suggests, but with the right of a witness to consent or refuse to be interviewed. Pursuant to G. L. c. 258B, § 3 (*m*), "victims and witnesses [shall have the right] to be informed of the right to submit to or decline an interview by defense counsel or anyone acting on the defendant's behalf, except when responding to lawful process, and, if the victim or witness decides to submit to an interview, the right to impose reasonable conditions on the conduct of the interview." We have approved the provision in the statute giving victims and witnesses the right to impose reasonable conditions on any interview they agree to give. See *Commonwealth* v. *Rivera*, 424 Mass. 266, 272-273 & n.9 (1997), cert. denied, 525 U.S. 934 (1998). In this case we are concerned with the exercise of that right when the witness is a minor child. For reasons that will become apparent, this is not a case involving a witness in custody.

Parents have a constitutionally protected liberty interest in the care, custody, and control of their children. *Troxel* v. *Granville*, 530 U.S. 57, 66-67 (2000). Their authority includes the power to control visits to the child by any third party. *Id.* at 67-68. Although constitutionally protected, the rights of parents are not absolute, but are tempered by the best interest of the child. *Id.* See *Opinion of the Justices*, 427 Mass. 1201, 1203 (1998). Consent to be interviewed necessarily lies within a parent's authority to control visits with his or her minor child, and the defendant does not argue otherwise. A parent may consent or refuse, on behalf of a minor child, to be interviewed by the defendant or the prosecutor, or both. Correspondingly, it is the parent, and not the child, who may be summonsed for a *Carita* colloquy.

Where the department has been awarded permanent custody of a minor child in a care and protection proceeding, "decisions related to normal incidents of custody, by the terms of [G. L. c. 119,] §§ 21, 26 and 32, are committed to the discretion of the department"); *Care & Protection of Isaac*, 419 Mass. 602, 609 (1995). Its discretionary authority in cases where it has been awarded temporary custody under G. L. c. 119, § 26 (2), is comparable. See *Care & Protection of Jeremy*, 419 Mass. 616, 620-621 (1995). This authority specifically includes the power "to control visits to the child." G. L. c. 119, § 21, definition of "custody." The power to control visits necessarily includes the right, coextensive with that of a parent, to consent or to refuse, on behalf of a minor child over whom it has custody, to be interviewed by the defendant or the prosecutor, or both. Other jurisdictions have recognized that State agencies having custody of a minor child may refuse requests by defendants to interview the child. See *United States* v. *Rouse*, 111 F.3d 561, 566 (8th Cir. 1997); *Hewlett* v. *State*, 520 So. 2d 200, 203-204 (Ala. Crim. App. 1987); *Thornton* v. *State*, 264 Ga. 563, 572-573 (1994); *State ex rel. O'Leary* v. *Lowe*, 307 Or. 395, 400-404 (1989) (en banc). We conclude that the decision to allow or to refuse to allow one or more of the children to be interviewed by the defendant, or his attorney or experts, was a decision that belonged to the department as custodian of the children.[4] There was no need, therefore, to summons the children for purposes of engaging them in the colloquy prescribed by *Commonwealth* v. *Carita, supra.* There also has been no showing that the guardian ad litem for the children in the care and protection proceeding had any authority to make decisions concerning visits, and therefore there was no need to engage the guardian ad litem in a *Carita* colloquy. There was no error.

---

[4] Any allegation that the department failed to follow its procedures may be addressed on the merits through the administrative process. See 110 Code Mass. Regs. §§ 10.05 et seq. (1998). Similarly, any claim that the department has not acted in the best interests of the children is reviewable in the care and protection proceeding. See G. L. c. 119, § 21 (definition of "[c]ustody," last sentence), § 26 (5). These issues properly may be raised, and were, during cross-examination of Commonwealth witnesses. Cf. *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980) (defense may be built on failure to follow established procedures).

There is nothing in the record to suggest that the department was acting as agent of the prosecution such that its denial of an interview by the defendant's expert constituted an impermissible interference with the defendant's rights. See *Commonwealth* v. *St. Pierre, supra* at 658. Although the department is obligated to refer certain information to the district attorney if, after investigation, it has reasonable cause to believe that a child has suffered certain conditions as a result of abuse or neglect, see G. L. c. 119, § 51A, § 51B (4); 110 Code Mass. Regs. §§ 4.50-4.53 (1996), the statute does not create for the department an interest in the criminal prosecution, and it does not give the prosecutor any control over the department. The department may release additional information that is directly related to the § 51A report it received, and its § 51B investigation, provided such release "would not be contrary to the best interests of the child(ren) in question." 110 Code Mass. Regs. § 4.53. The guiding principle "[i]n all matters and decisions by the department . . . shall be to define best interests of the child." G. L. c. 119, § 1. The district attorney does not operate under a similar directive, and the two agencies may even be working toward conflicting goals: the district attorney may be seeking incarceration of an abusive parent while the department may be working to assist family members "in dealing with the situation." *Commonwealth* v. *Berrio*, 407 Mass. 37, 38 (1990). The department may even be working to reunite the family. See 110 Code Mass. Regs. § 1.01 (1993).

Although a representative of the district attorney's office may participate on a multi-disciplinary service team created to "review and monitor the service plan developed by the department" for the family, to "make recommendations regarding amendments to the service plan, the advisability of prosecuting members of the family, and the possibility of utilizing diversionary alternatives," G. L. c. 119, § 51D, and to "discuss the possible effects of prosecution on the child and attempt to minimize the possibility of multiple interviews of the child," 110 Code Mass. Regs. § 4.54(3)(d), the clear purpose of the team is to maximize the efficacy of clinical services to the child and the family, and not to assist the prosecution. Moreover, "[t]he members of [the] team shall be considered to be employees of

the department for purposes of protecting the confidentiality of such data and such data shall be utilized solely to carry out the provisions of this section." G. L. c. 119, § 51D. The relationship between the department and the district attorney is not an agency relationship, but a cooperative effort intended to support the best interest of the child, not the prosecution of criminal cases. Such a relationship does not constitute interference with a defendant's opportunity to interview witnesses to prepare a defense. Finally, there was no showing that the prosecutor impermissibly interfered with the decision to deny an interview with the children. See *Commonwealth* v. *St. Pierre, supra* at 658.

3. *Request for voir dire concerning interview techniques.* On the day the case was called for trial the defendant filed a motion for voir dire as to the techniques used by the Commonwealth when interviewing the defendant's children. The supporting affidavit suggests that the children had initially accused their mother's former husband of the abuse, expressing fears that he was "hiding in the walls" of their home. However, following extensive therapy and exhortations from foster parents and social workers not to lie and fantasize, together with reinforcement by the defendant, codefendant, and the defendant's mother, who were required as a condition of their visits with the children to tell the children that the man in question did not exist (he does, in fact, exist), the children stopped accusing their mother's former husband and began to accuse the defendant and the codefendant. The defendant contended that these measures "were so coercive and suggestive that they substantially distorted the children's recollections of actual events and thus compromised the reliability of their statements and testimony." The judge denied the motion for voir dire, but he indicated that the issue could be addressed at the trial.

At trial, the children gave testimony on cross-examination that lent some support to the defendant's claim. A defense expert testified that "[t]here were reliable methods and procedures used that may put this case in the high risk for there being unreliable utterances from the children. That's as far as I feel scientifically I'm comfortable going." The Commonwealth's witnesses testified to the contrary.

The question of a witness's competency to testify "is peculiarly for the trial judge and his determination will be rarely faulted on appellate review." *Commonwealth* v. *Whitehead,* 379 Mass. 640, 656 (1980). Where the trial was jury waived, there was no need for the judge to conduct a separate competency hearing. "A trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence is to be considered in his role as factfinder." *Commonwealth* v. *Batista,* 53 Mass. App. Ct. 642, 648 (2002). The question presented was one of fact and was aired thoroughly. The judge could have ignored the children's testimony if he thought they were incompetent or that their accusations were the product of suggestion or coercion. There is no indication that the judge applied the law incorrectly in assessing any suggestive or coercive aspects of the interview techniques used with the children, any coercive techniques used with the defendant, codefendant, or the defendant's mother, or assessing whether the recollection of the children had been distorted and their reliability as percipient witnesses compromised. The defendant does not argue that the evidence does not support the judge's implicit finding that the children's testimony was reliable. There was no error.

4. *Motion for a new trial.* The defendant filed a motion for a new trial that was denied, and he seeks appellate review of that denial. The motion is not properly before us and we do not consider it.

While his direct appeal was pending in the Appeals Court, the defendant sought a stay pending resolution of a motion for a new trial. The appeal was stayed, but not on the endorsement of a justice of the Appeals Court. Subsequently, a justice of the Appeals Court vacated the stay, and twice after reconsideration the order to vacate the stay remained in place. The defendant did not seek a stay in this court.

The motion for a new trial proceeded to hearing and was denied. The defendant did not file a motion to consolidate the appeal from the denial of that motion with the direct appeal. Under their own stipulated briefing schedule the parties filed "supplemental" briefs addressing the denial of the motion for a new trial.

"Once a party enters an appeal . . . the court issuing the judgment or order from which an appeal was taken is divested of jurisdiction to act on motions to rehear or vacate." *Commonwealth* v. *Cronk*, 396 Mass. 194, 197 (1985), and cases cited. The only exception to this rule is the grant of a stay of appellate proceedings by a single justice of an appellate court for the purpose of prosecuting a postjudgment motion. See *Commonwealth* v. *Montgomery*, 53 Mass. App. Ct. 350, 353 (2001) (once appeal is entered in Appeals Court, motion for new trial may be considered only if appellate proceedings are stayed by single justice). Where there was no stay granted by a single justice of either the Appeals Court or this court, the Superior Court was divested of jurisdiction to hear the motion for a new trial. Consequently, nothing is before us with respect to the defendant's motion for a new trial. The denial of the motion for a new trial is vacated "and [that motion is] to be treated as not acted upon and awaiting determination by the Superior Court." *Id.* at 355.

*Judgments affirmed.*