Commonwealth *vs*. Wilbert Eddington.

No. 01-P-1291.

Hampden. October 22, 2007. - January 31, 2008.

Present: Cowin, Katzmann, & Meade, JJ.

*Practice, Criminal,* Disqualification of judge, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

A Superior Court judge acted within his discretion — and therefore did not create a substantial risk of a miscarriage of justice — in declining to recuse himself from a defendant's jury-waived trial on child abuse charges, where the record demonstrated that the judge conducted an internal test, found himself free of disabling prejudice, and remained impartial [141-144], and where the judge's previous acceptance of the codefendant's pleas of guilt did not constitute a basis for reasonably questioning his impartiality in conducting the trial, as the judge's view of the defendant was not alleged to be derived from an extrajudicial source [144-147]; consequently, the defendant's claim of ineffective assistance of counsel, premised on his counsel's failure to request that the judge recuse himself, was unavailing [147].

A criminal defendant's waiver of his right to a trial by jury was not the result of illegal inducement by the judge, where the judge informed the defendant (who had expressed concern about the effect that photographic evidence of one of the abuse victims would have on a jury) that he most likely would consider that evidence in his determination if the defendant waived his right to a jury trial, where the defendant assured the judge that he preferred to be tried by the judge, where the record indicated that the defendant had decided to waive his right to a jury trial long before his conversation with the judge about the photographic evidence, and where the defendant's answers to the judge's questions regarding whether the waiver was intelligent and voluntary indicated that the waiver met all the legal requirements. [148-149]

INDICTMENTS found and returned in the Superior Court Department on July 17, 1998.

The cases were heard by *C. Brian McDonald*, J.

*Kathleen M. Kelly* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

KATZMANN, J. After a jury-waived trial in Superior Court, the defendant, Wilbert Eddington, was convicted of one count of wantonly and recklessly permitting substantial bodily injury to a child in his care (felony child abuse) in violation of G. L. c. 265, § 13J; three counts of assault and battery on a child causing substantial bodily injuries and five counts of assault and battery on a child causing bodily injury, in violation of G. L. c. 265, § 13J; two counts of assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A(*b*); and two counts of the lesser included offense of assault and battery. The defendant now appeals, arguing principally that the failure of the judge — who had accepted the guilty pleas of the codefendant — to recuse himself from the jury-waived trial, was an abuse of discretion that created a substantial risk of a miscarriage of justice. He also contends that defense counsel provided ineffective assistance, and that the judge improperly induced him to waive his right to a jury trial. We affirm.

*Background.* The case arises out of the physical abuse of four male children, J.G., E.G., D.E., and K.E., by their mother, Yvette Gordon, and their father, the defendant. The Commonwealth charged the defendant and Gordon as codefendants, each acting as principals and as joint venturers.[1] The Commonwealth initially contemplated a joint trial of the defendant and Gordon.[2]

On June 6, 2000, Gordon tendered her guilty pleas before a Superior Court judge. At the plea hearing, the prosecutor presented a summary of the evidence it would have offered to prove Gordon's guilt, proceeding in part on a joint venture theory that also implicated the defendant. There were no witnesses at the plea hearing. The judge was also presented with photographs of the beaten children, including the youngest child, K.E., who was

---

[1]The defendant was indicted on eighteen counts: one count of felony child abuse as to K.E., four counts of assault and battery on a child causing substantial bodily injury as to K.E., six counts of assault and battery causing bodily injury as to K.E., and seven counts of assault and battery by means of a dangerous weapon, to wit, a belt, with two counts as to K.E., two counts as to D.E., and one count each as to J.G., E.G., and A.E.

[2]It appears that during preliminary discussions between defense counsel and the prosecutor, Gordon's counsel stated an intention to proceed with a jury, while the defendant's counsel stated a preference for a jury-waived trial.

alleged to be the victim in the majority of the charges. The judge
determined that the Commonwealth had put forth a sufficient
factual basis for him to accept Gordon's plea. With Gordon's
guilty pleas, the defendant was left to proceed on his own.

On the day after Gordon pleaded guilty, when the defendant's
case was called, defense counsel informed the judge, who was
also the plea judge, that the defendant wished to move forward
without a jury. In what she described as "an abundance of cau-
tion," the prosecutor then suggested that since the judge had
already heard and accepted Gordon's guilty plea, the judge
should consider recusing himself in order to avoid any possibil-
ity of an accusation of partiality in the future that might create
grounds for appeal. The prosecutor acknowledged that there
was no legal authority requiring the judge to recuse himself. In
response, defense counsel indicated that he had "thorough and
complete conversations with [the defendant]" concerning the
defendant's choice to waive his right to a jury trial and to have
this particular judge hear the case. Stating that it was in the
defendant's "interest" that the case not be transferred to another
judge, defense counsel specifically requested that the judge not
recuse himself, and firmly articulated that this request was es-
sentially a planned, tactical decision. The judge held a lengthy
recess (of about two hours and forty-five minutes) during which
he seriously considered the Commonwealth's oral motion. The
judge determined that he would not recuse himself and listed a
variety of reasons, including citing case law, in support of his
decision.

During the jury-waived trial (in which the defendant did not
testify), the judge heard Gordon's testimony as well as extensive
medical evidence and testimony detailing K.E.'s injuries.[3] Gor-
don testified that both she and the defendant had beaten K.E.

---

[3]In the early evening on May 11, 1998, two Department of Social Services
(DSS) case workers responded to a report of suspected physical abuse and
neglect of K.E., then two and one-half years old. At the defendant and Gor-
don's home, the DSS workers observed K.E. and noticed numerous injuries.
Medical examination that night at Baystate Medical Center resulted in K.E.'s
diagnosis with a nearly severed right pinkie finger that would require amputa-
tion; malnourishment; third degree burns to his buttocks; lash marks across
his back in a crisscross pattern that were about five to seven inches in length
and a number of scars and wounds in a variety of different stages of healing
that were "too numerous to even estimate"; laceration marks around his

on multiple occasions, sometimes separately and sometimes act-ing together. She further testified that she and the defendant beat K.E. and his brothers using belts and at times an extension cord, and that the defendant beat the boys less frequently than she did since they were more likely to respond to the defendant's commands. However, Gordon clarified that when the defendant beat the boys, he beat them severely. She also testified that the defendant at times witnessed her beat the boys, but did not intervene to stop the physical abuse.

On June 27, 2000, the judge found that with respect to K.E., the defendant was guilty of one count of felony child abuse, three counts of assault and battery causing substantial bodily injury, four counts of assault and battery causing bodily injury, and one count of assault and battery by means of a dangerous weapon, to wit, a belt; with respect to E.G., the defendant was guilty of one count of assault and battery by means of a danger-ous weapon, to wit, a belt; and with respect to J.G. and D.E., the defendant was guilty of one count as to each of the lesser in-cluded offenses of assault and battery (as opposed to assault and battery by means of a dangerous weapon as charged in the indict-ments). However, the judge found the defendant not guilty of six charges (three of which the judge allowed the defendant's motion for required finding of not guilty), citing the lack of medical evidence specifically linking the defendant's physical abuse as the cause of certain injuries, such as K.E.'s nearly severed finger, broken clavicle, and broken arm. The defendant appealed.[4]

*Discussion.* a. *Recusal.* Notwithstanding his trial counsel's insistence that the judge not recuse himself, on appeal the de-fendant argues that the judge violated his State and Federal due process rights to a fair trial by not recusing himself after pre-

wrists and ankles; a broken nose; missing upper incisor teeth; an untreated broken right clavicle in advanced stages of healing; a broken left arm; a linear scar on his left scrotum; pancreatitis, most likely from blunt force trauma to the abdomen; two black eyes; different color scars and bruising on his face, head, and neck indicating injuries occurring over a lengthy time period; chronic injuries to both of his feet; cocaine in his urine; and bruises in differ-ent stages of healing on various parts of his body.

[4]The defendant's appeal was entered in this court on September 12, 2001, but was dismissed pursuant to our Standing Order 17A in January, 2002. Represented by new counsel, the defendant filed in March, 2007, a motion to reinstate his appeal and to file his brief late, which we allowed.

siding over Gordon's plea colloquy. Noting that the judge had accepted the guilty pleas of Gordon and that those convictions were based on a theory that Gordon had been a coventurer with the defendant, the defendant argues that the judge abused his discretion in failing to recuse himself and that such error created a substantial risk of a miscarriage of justice. The defendant contends that the judge could not have fairly considered the evidence offered against him, having previously accepted the version of culpability advanced as the basis for Gordon's guilty pleas. Arguing that his trial counsel was ineffective for not objecting to the judge presiding over the jury-waived trial (and, indeed, had sought that involvement), the defendant notes correctly that the recusal claim here is subject to an analysis whether any error created a substantial risk of miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 294-296 (2002) (waiver doctrine incorporates exceptions including claim that failure to preserve issue stems from ineffective assistance of counsel). See also *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 169, 171 (2000) ("Where the error was invited by the defendant, our review is limited to whether a substantial risk of a miscarriage of justice occurred"). There was no abuse of discretion, and thus, no substantial risk of a miscarriage of justice.[5]

The touchstone for the principle of judicial impartiality are

[5]Here, the defendant's recusal claim is tied to his claim of ineffective assistance of counsel. The defendant essentially argues that his trial counsel was ineffective because he advocated for the judge to hear the trial, as opposed to recusing himself, and this resulted, he alleges, in error by the judge creating a substantial risk of a miscarriage of justice. Although not raised by the parties, we note, without deciding, that the doctrine of waiver may apply to the defendant's recusal claim. See *Commonwealth* v. *Adkinson*, 442 Mass. 410, 416 (2004) ("The defendant elected to proceed jury waived before this particular judge. He did not request a trial before a different judge. He may not now be heard to complain about his trial strategy because of his disappointment in the outcome" [citation omitted]). "A finding of waiver does not end the analysis, however. All claims, waived or not, must be considered. The difference lies in the standard of review that we apply when we consider the merits of an unpreserved claim." *Commonwealth* v. *Randolph, supra* at 293-294. In reviewing a claim where the defendant alleges that his failure to preserve an issue stems from ineffective assistance of counsel at trial, this court is to apply the standard whether there was error creating a substantial risk of a miscarriage of justice. See *id.* at 296. "If we determine that an error has been committed, we ask whether it gives rise to a substantial risk of a miscarriage of justice — ineffectiveness is presumed if the attorney's omission created a substantial

the words memorialized in art. 29 of the Massachusetts Declaration of Rights, requiring that judges be "as free, impartial and independent as the lot of humanity will admit." See *Commonwealth v. Gogan,* 389 Mass. 255, 259 (1983). Moreover, State and Federal due process provide support for this principle. See *Commonwealth v. Campbell,* 5 Mass. App. Ct. 571, 586 (1977). In addition, "a judge 'should disqualify himself in a proceeding in which his impartiality might reasonably be questioned.' " *Commonwealth v. Gogan, supra,* quoting from S.J.C. Rule 3:09, Canon 3(C)(1), as appearing in 382 Mass. 811 (1981).

"Generally, recusal is a matter left to the discretion of the judge." *Commonwealth v. Adkinson,* 442 Mass. 410, 415 (2004), citing *Commonwealth v. Coyne,* 372 Mass. 599, 602 (1977). See *Commonwealth v. O'Connor,* 7 Mass. App. Ct. 314, 320 (1979) (decision to withdraw from case is within judge's discretion); *Lawrence Sav. Bank v. Levenson,* 59 Mass. App. Ct. 699, 712 (2003) (same). In order "[t]o sustain an appellate claim that a judge committed an abuse of discretion, it must be demonstrated that 'no conscientious judge, acting intelligently, could honestly have taken the view expressed by him.' " *Commonwealth v. Goodreau,* 442 Mass. 341, 348 (2004), quoting from *Commonwealth v. Ira I.,* 439 Mass. 805, 809 (2003).

There is a two-prong analysis for determining recusal. "When faced with 'a question of his capacity to rule fairly, the judge [must] consult first his own emotions and conscience." *Haddad v. Gonzalez,* 410 Mass. 855, 862 (1991), quoting from *Lena v. Commonwealth,* 369 Mass. 571, 575 (1976). "If he pass[es] the internal test of freedom from disabling prejudice, he must next attempt an objective appraisal of whether this [is] 'a proceeding in which his impartiality might reasonably be questioned.' " *Commonwealth v. Gogan, supra,* quoting from *Lena v. Commonwealth, supra.*

Turning to the first prong of the recusal analysis, we note that the judge in this case took great pains to search his conscience

---

risk, and disregarded if it did not." *Ibid.* Because, in any event, the defendant's ineffective assistance of counsel claim requires us to reach the defendant's recusal claim, see note 8, *infra,* we consider at the outset the merits of the recusal claim.

prior to deciding not to recuse himself. Returning from his recess of two hours and forty-five minutes, the judge, quoting from *Commonwealth* v. *Gogan, supra,* stated: "I have conducted an internal test and I find myself free from any disabling prejudice. I also have conducted an external test, that is, an objective appraisal, and I do not believe that . . . this is a proceeding in which my impartiality might reasonably be questioned . . . ." The judge also noted that he had not yet made any decisions regarding the innocence or guilt of the defendant, nor had he made any decisions about the credibility of any witnesses. Commenting on the photographs of K.E.'s injuries, the judge stated that although he had already seen the photographs, they did not elicit an emotional response from him such that they would impair his ability to evaluate their relevance to the defendant's innocence or guilt. The judge further stated that by going forward, he was "making the unequivocal assertion that on [his] own conscience there [was] no disqualification." The judge met his responsibilities under the first prong of the recusal analysis.

With respect to the second prong of the recusal analysis, the defendant contends that the fact that the judge had accepted Gordon's guilty pleas constitutes a basis for reasonably questioning his impartiality in conducting the trial. This claim is unavailing.

During the course of Gordon's plea hearing, the judge was exposed to evidence relating to the defendant's guilt. This type of exposure, however, does not require recusal. To establish that a judge should recuse himself, a "defendant ordinarily must show that the judge demonstrated a bias or prejudice arising from an extrajudicial source, and not from something learned from participation in the case." *Commonwealth* v. *Adkinson,* 442 Mass. at 415. See *Kennedy* v. *Justice of the Dist. Ct. of Dukes County,* 356 Mass. 367, 379 (1969); *Commonwealth* v. *Leventhal,* 364 Mass. 718, 722 (1974); *Haddad* v. *Gonzalez,* 410 Mass. at 862. "[N]ot subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving

the same defendant." *Commonwealth* v. *Adkinson*, 442 Mass. at 415, quoting from *Liteky* v. *United States*, 510 U.S. 540, 551 (1994). See *Commonwealth* v. *Williams*, 364 Mass. 145, 149 (1973) ("no error in the mere fact that the same judge presided over a lengthy evidentiary hearing on the defendant's motions to suppress and presided over the trial in chief before a jury"); *Commonwealth* v. *Coyne*, 372 Mass. at 601 (in jury-waived trial, recusal not required even where judge previously heard defendant's testimony, which he characterized as "virtually admissions of guilt," in denying pretrial motion to suppress admissions); *Commonwealth* v. *Adkinson*, 442 Mass. at 415 (rejecting claim that judge was required to recuse himself from hearing case jury waived merely because he previously heard and rejected codefendant's suppression motion); *Commonwealth* v. *Roukous*, 2 Mass. App. Ct. 378, 387 (1974) (no recusal required where no merit to claim that judge, having presided at earlier trial of five codefendants, gave "the appearance that the court had prejudged the guilt of the defendant").

A judge does not have to recuse himself from a criminal case merely because he has heard unfavorable remarks about a defendant in the course of prior litigation. *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. at 587. See *Fogarty* v. *Commonwealth*, 406 Mass. 103, 111 (1989) (affirming judge's denial of motion for recusal from hearing new trial motion where judge had presided over trial). See also *Commonwealth* v. *Valliere*, 366 Mass. 479, 483 (1974) (fact that judge read inquest decision, not admissible at trial, did not require disqualification where case tried before jury). Even if a judge had formed a negative opinion of the defendant because of the judge's prior exposure to the case, this would not constitute prohibited bias. See *Fay* v. *Commonwealth*, 379 Mass. 498, 505 (1980) (recusal not required in contempt case where judge presided over previous hearing during which he received financial statement he characterized as "an insult to the court"); *Haddad* v. *Gonzalez*, 410 Mass. at 864 (no doubt that judge in course of proceedings below formed negative impression of defendant based on his appraisal of him, but that is not ground for disqualifying bias).[6] The thrust of these cases makes clear that where the judge's view of the defendant was not derived

---

[6]The United States Supreme Court has observed that extrajudicial bias is

from an extrajudicial source, recusal was not required and that such a determination was within the judge's discretion.[7]

In this case, the defendant's contention of judicial bias is based solely on the fact that the same judge heard Gordon's plea and presided over the defendant's jury-waived trial. There is no claim that the judge considered inadmissible evidence which was central to his assessment of the defendant's culpability. Cf. *Commonwealth* v. *Coyne*, 372 Mass. at 601-603 (noting issues that arise when judge denies suppression motion excluding admission of defendant's incriminating statements and subsequently conducts jury-waived trial). See generally Smith, Criminal Practice and Procedure § 24.92 (3d ed. 2007). Accordingly, the second prong of the recusal analysis was also satisfied, and the judge did not abuse his discretion in failing to recuse himself.

We also note that rather than reflecting any bias, the record demonstrates that the judge gave substantial weight to all of the defendant's arguments in a fair and impartial manner. Nowhere in the lengthy volumes of trial transcripts did the judge ever demonstrate any signs of bias, and the defendant does not point to any instances of bias in his brief. See *Lawrence Sav. Bank* v. *Levenson*, 59 Mass. App. Ct. at 712 (when "[n]othing in the record suggests actual bias on the part of the judge, and the record amply shows that the judge searched her conscience and determined that she was free of bias or prejudice," recusal is not necessary). It is also worth noting that the judge found the defendant not guilty of six charges, and on two charges only convicted him of the lesser included offenses. "Such discernment by the factfinder in assessing the evidence is a strong indication" that the proceedings were not infected by any actual prejudice to the defendant. *Commonwealth* v. *Green*, 52 Mass. App. Ct. 98, 103 (2001).

In sum, the record demonstrates that the judge consulted his

not the only type of bias that might require recusal, since certain types of "pervasive" bias springing from the facts of the case might also disqualify a judge. See *Liteky* v. *United States*, *supra*. In the present case, there is no indication that the judge held any type of pervasive bias.

[7]Moreover, at trial, the judge ultimately heard Gordon, who was subjected to the rigors of cross-examination, testify to many of the facts which had formed the basis of her guilty pleas.

conscience and remained impartial, acting in a conscientious and intelligent manner. Moreover, the fact that the judge had accepted· Gordon's guilty plea does not constitute a basis for reasonably questioning his impartiality in conducting the trial. Because there was no abuse of discretion, there exists no substantial risk of a miscarriage of justice.

b. *Ineffectiveness of defense counsel.* For the first time on appeal, the defendant argues that his defense counsel demonstrated ineffective assistance when he did not ask the judge to recuse himself. In order to prevail on a claim of ineffectiveness of counsel, the defendant has the burden of demonstrating that there had been "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and that this incompetence "has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Rubeck*, 64 Mass. App. Ct. 396, 398 (2005), quoting from *Commonwealth* v. *Pike*, 53 Mass. App. Ct. 757, 760 (2002). "[I]f an omission of counsel does not present a substantial risk of a miscarriage of justice . . . , there is no basis for an ineffective assistance of counsel claim under either the Federal or the State Constitution." *Commonwealth* v. *Curtis*, 417 Mass. 619, 625 n.4 (1994). Because, as has been discussed, the judge did not abuse his discretion in deciding not to recuse himself, the defendant's ineffective assistance of counsel claim must also fail.[8] See *Commonwealth* v. *Randolph*, 438 Mass. at 295-296.

---

[8]Given the absence of error, we need not discuss the ineffective assistance claim any further. In any event, we note that it is clear from the record that defense counsel's insistence that the judge not recuse himself was the product of a reasonable, calculated decision. Defense counsel stated that he had observed Gordon's plea colloquy and the recitation of facts with the express intention of monitoring the judge's reactions to the graphic allegation. "A tactical decision by trial counsel is considered ineffective assistance only if such a decision was manifestly unreasonable when made." *Commonwealth* v. *Diaz*, 448 Mass. 286, 288 (2007), citing *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998). Defense counsel acknowledged the "extremely challenging" nature of the facts of the case, pointing out that this was the main basis for the defendant's decision to proceed in front of a judge and not a jury. Under the circumstances, this decision was not unreasonable. Having decided to proceed to trial without a jury, defense counsel and the defendant analyzed the judge and came to the conclusion that this specific judge would likely view the

c. *Potential judicial inducement of waiver of right to trial by jury.* On appeal, the defendant mischaracterizes the waiver of jury trial colloquy interaction, asserting that the judge induced the defendant to waive his right to a jury trial by threatening to allow a jury to view potentially damning photographic evidence, and that this "inducement" was error creating a substantial risk of a miscarriage of justice. The defendant's argument fails as there was no error.

During the waiver colloquy, the defendant specifically told the judge:

> "I rather get tried by a judge because if I get tried, I don't want to get tried by a jury. The reason why, because if they show pictures, they're not going to concentrate on the facts of what's going on, they're just going to pay attention to the pictures, not the facts of what's going on."

The judge carefully informed the defendant of the facts as presented by the Commonwealth during Gordon's plea hearing. In so doing, the judge summarized the facts as represented by the Commonwealth at that hearing in order to involve the defendant. The judge specifically told the defendant that he had seen the photographs represented to have been taken of K.E., and that he would most likely consider that photographic evidence in his determination if the defendant waived his right to a

---

defendant's case in an impartial manner.

In addition, the defendant failed to make a persuasive argument that defense counsel's omissions deprived him of a substantial defense at trial. The defendant's sole argument consists entirely of dubious speculations — if defense counsel had requested that the trial judge recuse himself, and if that request convinced the judge to leave the case, then another judge might have acquitted the defendant. Even if defense counsel had asked the judge to recuse himself, there is no legal ground to compel or to warrant such an action. Indeed, the judge's careful reasoning suggests that he still would not have recused himself. "It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success." *Commonwealth v. Conceicao*, 388 Mass. 255, 264 (1983). Furthermore, even if the judge had recused himself and a different judge had heard the case, there is no reason to believe that another judge would have ruled differently in any material way during the trial. Indeed, the defendant points to no errors by the judge during the trial. Considering the full record of the case, the defendant could not have expected a better outcome from a different judge.

jury trial. Nevertheless, the defendant told the judge, "I would rather be tried by you."

Also, the record indicates that the defendant had decided to waive his right to a jury trial long before his conversation with the judge about the photographic evidence. The fact that the judge played no role in initiating or encouraging the defendant to consider waiving his right to a jury trial also defeats the claim that the judge aimed to induce such an action.

After the defendant assured the judge that he wanted to be tried without a jury and by him specifically, the judge performed his legal duty to determine whether the defendant's waiver was intelligent and voluntary. The defendant's answers indicated that his waiver of his right to a jury trial did in fact meet all the legal requirements and was not the result of improper inducement. See *Commonwealth* v. *Hiskin*, 68 Mass. App. Ct. 633, 638 (2007).

*Judgments affirmed.*