NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-753

COMMONWEALTH

vs.

HUSSEIN ZAZA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of indecent assault and battery on a person aged fourteen or older after he rejected a plea disposition suggested by the judge.  On appeal, the defendant argues that the judge violated his constitutional right to a fair trial by presiding over the jury trial after "attempting to orchestrate a plea agreement."  He also claims that the prosecutor improperly appealed to juror sympathy.  We affirm.

Background.  The Commonwealth presented the following evidence.  The defendant owned a car dealership in Rehoboth. The victim, who was in her mid-thirties, purchased two cars from the defendant, one in 2019 and the other in 2020.  After buying

the second car, the victim returned to the dealership seeking a spare key.  The defendant brought the victim into the dealership's garage, where he hugged her.  The victim understood the hug as a sign of gratitude for buying a car from the defendant, so she hugged back.  The defendant then began to grope the victim's buttocks and breasts, lifted her bra, and put his mouth on her breast.  The defendant also tried to put the victim's hand down his pants, and she felt his erect penis with her hand over his clothing.  The victim pushed the defendant away and walked to her car.  The defendant followed and rubbed the victim's legs and thighs near her vagina as she sat in her car.  The victim shut the car door, drove away, and telephoned her mother to tell her what had happened.  The victim's mother testified that the victim sounded "extremely upset" on the phone, which made the mother "very concerned with [the victim's] demeanor."  She testified that when she saw the victim a short time later, the victim was still "extremely upset."  After speaking to her mother, the victim drove with her father to the Rehoboth police station.  Within minutes of her arrival, and not more than ninety minutes after she left the defendant's dealership, the victim gave a statement to a Rehoboth police officer.  The officer testified that, when he first saw the victim, "she appeared to be upset . . . [s]niffling, anxious."

2

The defendant testified that he was married, had three children, suffered from erectile dysfunction, and had simply hugged the victim after both car sales.

Discussion.  1.  The judge's participation in plea discussions.  The defendant contends that the judge's participation in plea discussions resulted in bias, which deprived the defendant of a fair trial.  Because the defendant did not object to the judge's role in plea negotiations or seek his recusal from the trial, we review for a substantial risk of miscarriage of justice.  Commonwealth v. Eddington, 71 Mass. App. Ct. 138, 142 (2008).

In support of his contention that the judge improperly participated in plea negotiations, the defendant cites the applicable caselaw, all of which is from the late twentieth century.  See, e.g., Commonwealth v. Hogan, 426 Mass. 424, 430 (1998); Commonwealth v. Gordon, 410 Mass. 498, 501 n.3 (1991). We need not address the proper parameters of a judge's involvement in plea discussions or the evolution of the role of the trial judge in criminal case management over the past three decades because we conclude in this case that the defendant has failed to show that the judge displayed any partiality in his conduct of the trial.[1]

_____

[1] We recognize that judicial involvement in pleas is a daily reality and an integral part of case management in busy trial

3

The defendant asserts that the judge's "vindictiveness" toward him can be inferred from the sentence imposed after trial compared to the disposition offered for a plea. It is error for a judge to punish a defendant for exercising the right to trial and the verdict of a jury. Commonwealth v. Johnson, 27 Mass. App. Ct. 746, 750-752 (1989). However, "[t]hat a defendant receives a stiffer sentence than was offered does not, by itself, betoken vindictiveness." Id. at 750. "After all, a plea bargain regularly implies a lenient sentence." Commonwealth v. Ford, 35 Mass. App. Ct. 752, 758 (1994).

Prior to empanelment, the judge stated that, if a jury convicted the defendant, "he's going to jail." After further discussion with the attorneys and the victim, the judge stated he was "inclined to impose a probation of three years" if the

_____

court sessions. Nevertheless, we note our concern about comments made by the judge in this case during plea proceedings, where he (1) tied his stated desire to avoid incarcerating the defendant to the defendant's immigration status; (2) promised the defendant that he would not have to register as a sex offender upon a plea, despite such a decision requiring a hearing, see Commonwealth v. Ventura, 465 Mass. 202, 209 (2013); (3) commented to the victim about her "courage to come forward"; (4) told the victim that the incident was an "outrageous event"; (5) told the victim he was "trying to get some justice for [her] and [her] family"; (6) personalized the incident by stating to the victim, "I can't walk in your shoes. Nothing like this has ever happened to me, you know. I have a family, too"; and (7) discussed the defendant's age, criminal history, obligation to register as a sex offender, and immigration status with the victim in an apparent effort to convince her to agree to the proposed disposition of probation.

4

defendant pleaded guilty.  After the defendant elected to go to trial and the jury found the defendant guilty, the judge imposed a sentence of two years in the house of correction, one year to be served and the balance suspended for three years with the probationary condition that the defendant have no contact with the victim.

The defendant's sentence was "not harsh in terms of what the statute[] permitted."[2]  Johnson, 27 Mass. App. Ct. at 751. Nor did it exceed the Commonwealth's recommendation.  See Ford, 35 Mass. App. Ct. at 758.  It is also noteworthy that the judge's efforts to resolve the case by way of a plea and short of incarceration were couched in concerns he expressed about the defendant's age (fifty-nine years old), lack of prior criminal convictions, and immigration status.  The defendant does not point to anything in the record that suggests the judge's "displeasure" with the defendant's refusal of the plea offer. See id.  Indeed, when trial counsel responded to the judge's dispositional offer by saying, "Let's impanel," the judge simply stated, "Okay," and proceeded to address motions in limine. Ultimately, we do not think the disparity between the plea offer

---

[2] In relevant part, G. L. c. 265, § 13H, states, "Whoever commits an indecent assault and battery . . . shall be punished . . . by imprisonment for not more than two and one-half years in a jail or house of correction."

5

and postverdict sentence was so great that it established a reasonable likelihood that the judge was "vindictive" toward the defendant and therefore was biased in his conduct of the trial. See Johnson, supra at 750-752.

The defendant also posits a nebulous claim that the judge demonstrated his bias when, "in subtle ways, the judge in this case put his thumb on the scale." In support of this assertion, the defendant points only to two questions the judge asked during defense counsel's cross examination of a police witness. The judge's questions simply clarified the date the officer was trained to preserve evidence for further testing; those questions did not convey to the jury that the judge believed the defendant was guilty or demonstrate bias against the defendant. See Commonwealth v. Jiminez, 22 Mass. App. Ct. 286, 291-293 (1986) (no error in judge's clarifying questions to police witnesses). Moreover, any potential issue was alleviated when the judge instructed the jury, "You should not consider anything I've said or done during the trial . . . [or] in questions to the witnesses . . . as any indication of my opinion as to how you should decide the defendant's guilt or innocence." See id.

After a careful review of the trial record, we discern no evidence of bias in the judge's rulings or conduct toward the defendant. We thus conclude that there was no substantial risk of a miscarriage of justice and the defendant was not deprived

6

of a fair trial based on the judge's participation in plea discussions.

2. **Appealing to the jurors' emotions**. The defendant also argues that reversal of his conviction is required because the prosecutor appealed to the sympathy of jurors. The defendant asserts that it was improper for the prosecutor to elicit testimony from the victim's mother and a police officer that the victim appeared upset, and for the mother to testify that it "was upsetting to [her] . . . as a mother to listen to [the victim]." He also contends that it was improper for the prosecutor to "focus on the consequences of the alleged abuse" during closing argument. Because the defendant did not object at trial to the challenged testimony[3] or to the prosecutor's closing, we review this claim for a substantial risk of a miscarriage of justice. Commonwealth v. Brum, 492 Mass. 581, 600-601 (2023).

"Evidence of a victim's state of mind or behavior following a crime has long been admissible if relevant to a contested issue in a case." Commonwealth v. Arana, 453 Mass. 214, 225 (2009). Demeanor evidence is of particular importance where, as

---

[3] The defendant objected to the portion of the mother's answer, "I could tell that something --," but did not object to her testimony about the victim's demeanor. The judge quickly redirected the mother back to the victim's demeanor as opposed to "what she [the mother] could tell."

here, credibility concerning whether the offense occurred was a central issue in the trial. See Commonwealth v. Starkweather, 79 Mass. App. Ct. 791, 800-801 (2011). The victim's mother saw the victim minutes after the assault, and the police interview took place no more than ninety minutes after the victim left the defendant's dealership. We discern no error in the admission of this testimony regarding the victim's demeanor following the assaults.

As the Commonwealth concedes, the mother's statement regarding her own reaction when the victim told her about the sexual assault was not responsive to the prosecutor's question and was improper. However, because the testimony was fleeting, the prosecutor made no use of it during closing argument, and the jury likely would have inferred the mother's reaction in any event, we see no substantial risk of a miscarriage of justice from this testimony.

Finally, we disagree with the defendant that the prosecutor's statement during closing was improper. The defendant argued that the victim's testimony was rehearsed, "like she was looking for her next line, like it was a Lifetime movie." In response, the prosecutor asked the jurors to consider whether, during her testimony, the victim "seem[ed] like she was happy talking about this again." In context, this argument was not an improper appeal for the jury to sympathize

with the victim, but an appropriate counter to the defendant's attack on the victim's credibility and demeanor on the witness stand.  See Commonwealth v. Fernandes, 478 Mass. 725, 743 (2018) (prosecutor's closing may address witness demeanor, motive for testifying, and believability).

Judgment affirmed.

By the Court (Henry, Shin & Brennan, JJ.[4]),

Clerk

Entered:  May 1, 2025.

---

[4] The panelists are listed in order of seniority.